# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| JAMES HUNTER, | Appeal No. 24-1210 |
| v. | |
| ALEXIS KING, District Attorney for the 1ˢᵗ Judicial District, | District Court Case No. 1:23-cv-02989-DDD-MEH |
| CHRIS SCHAFFER, Director of the Colorado Bureau of Investigations, | |
| CHIEF SMITH, Lakewood Police Chief, | |
| YVONNE M. WOODS, Officer, laboratory technician of the Colorado Bureau of Investigations. | |

---

## APPELLEE ALEXIS KING'S ANSWER BRIEF

---

Appeal from the United States District Court

Civil Action No. 1:23-cv-02989-DDD-MEH (D. Colo.)

District Court Judge Daniel Domenico

Oral Argument is not requested

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF RELATED CASES ................................................... viii

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................ 1

STATEMENT OF THE CASE ................................................................. 2

SUMMARY OF THE ARGUMENT ........................................................ 5

ARGUMENT ......................................................................................... 6

I.   STANDARDS OF REVIEW ............................................................ 6

   A.   Federal Rule of Civil Procedure 12 ........................................... 6

     1.   Rule 12(b)(1) ....................................................................... 6

     2.   Rule 12(b)(6) ....................................................................... 7

   B.   This Court May Affirm on Any Ground Supported by the Record. ............ 8

II.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT IT LACKED
JURISDICTION OVER MR. HUNTER'S CLAIM UNDER THE *ROOKER-
FELDMAN* DOCTRINE. ........................................................................ 9

III. THE DISTRICT COURT'S DISMISSAL OF MR. HUNTER'S CLAIM MAY
BE AFFIRMED ON THE ALTERNATVE GROUNDS THAT DA KING
RAISED BELOW. ................................................................................. 13

   A.   *Heck* and *Res Judicata* also Bar Mr. Hunter's Claim. ............... 14

   B.   Mr. Hunter Did Not Allege Facts Plausibly Showing a Due Process
Conspiracy Claim, and his Claim Against DA King Was Subject to Dismissal

Under Rule 12(b)(6)..................................................................................17

    1.    The Complaint Did Not Plausibly Allege a Conspiracy............................17

    2.    Mr. Hunter did not Plead Facts Showing a Due Process Violation...........18

C.    Mr. Hunter Failed to State a Claim for Municipal Liability.....................19

IV. MR. HUNTER'S REMAINING ARGUMENTS WERE NOT PRESERVED AND LACK MERIT..................................................................................22

A.    The Issues Regarding the 2023 Amendment to the DNA Testing Statutes were not Preserved....................................................................................22

B.    The Arguments Regarding Colorado's Clemency Laws were not Preserved and Lack Merit.........................................................................................24

C.    The Arguments Regarding Federal Habeas Laws were not Preserved and are Irrelevant..........................................................................................27

D.    Mr. Hunter's Arguments Regarding the "Bad Faith Prosecution Exception" Fail.......................................................................................27

CONCLUSION.............................................................................................28

CERTIFICATE OF SERVICE .......................................................................31

# TABLE OF AUTHORITIES

Page(s)

Cases

*Afola v. Corr. Corp. of Am.*,
    2013 WL 2477126 (D. Colo. June 10, 2013) ...................................................... 18

*Alvarez v. Attorney Gen. for the State of Fla*.,
    679 F.3d 1257 (11th Cir. 2012) ...................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 8

*Baldwin v. O'Connor*,
    466 F. App'x 717 (10th Cir. 2012) ................................................................ 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 7, 18

*Bennett v. Spear*,
    520 U.S. 154 (1997) ................................................................................. 8, 13

*Bravo-Fernandez v. United States*,
    580 U.S. 5 (2016) ........................................................................................ 16

*Bryson v. City of Okla. City*,
    627 F.3d 784 (10th Cir. 2010) ....................................................................... 21

*Butler v. Compton*,
    482 F.3d 1277 (10th Cir. 2007) ..................................................................... 15

*Cacioppo v. Town of Vail*,
    528 F. App'x 929 (10th Cir. 2013) ............................................................ 20-21

*Coates v. Reigenborn*,
    2023 WL 6810961 (10th Cir. Oct. 16, 2023) .................................................. 20

*Connecticut Bd. of Pardons v. Dumschat*,
    452 U.S. 458 (1981) ................................................................................. 26-27

*D.C. Court of Appeals v. Feldman*,
    460 U.S. 462 (1983) ......................................................................... 4

*Dawson v. Suthers*,
    2015 WL 5525786 (D. Colo. Sept. 21, 2015) ...................................... 9

*District Attorney's Office for Third Judicial Dist. v. Osborne*,
    557 U.S. 52, 129 S. Ct. 2308, 174 L.Ed.2d 38 (2009) .................................. 19, 23

*Durre v. Dempsey*,
    869 F.2d 543 (10th Cir. 1989) ............................................................ 18

*Elkins v. Comfort*,
    392 F.3d 1159 (10th Cir. 2004) .......................................................... 8

*Erlandson v. Northglenn Mun. Ct.*,
    528 F.3d 785 (10th Cir. 2008) ........................................................... 11

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
    544 U.S. 280 (2005) ....................................................................... 16

*Frederiksen v. City of Lockport*,
    384 F.3d 437 (7th Cir. 2004) ............................................................. 9

*Gee v. Pacheco*,
    627 F.3d 1178 (10th Cir. 2010) .......................................................... 18

*Hansen v. Harper Excavating, Inc.*,
    641 F.3d 1216 (10th Cir. 2011) .......................................................... 2

*Heck v. Humphries*,
    512 U.S. 477 (1994) ............................................................... 1, 4, 14

*Holt v. United States*,
    46 F.3d 1000 (10th Cir. 1995) ........................................................... 7

*House v. Bell*,
    547 U.S. 518 (2006) ....................................................................... 25

*Huey v. Kunzweiler*,
  2020 WL 1325359 (N.D. Okla. Mar. 20, 2020) ................................................. 12

*Lawson v. Engleman*,
  67 F. App'x 524 (10th Cir. 2003) ....................................................................... 14

*Leonhard v. Correct Care Sols., LLC*,
  2020 WL 1694377 (D. Colo. Apr. 7, 2020) ....................................................... 20

*McDaniel v. Suthers*,
  335 F. App'x 734 (2009) ..................................................................................... 23

*McQuiggin v. Perkins*,
  569 U.S. 383 (2013) ............................................................................................ 24

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*,
  363 F.3d 1072 (10th Cir. 2004) ........................................................................... 7

*Mobley v. McCormick*,
  40 F.3d 337 (10th Cir. 1994) ............................................................................... 7

*Monell v. Dep't of Soc. Servs. of City of N.Y.*,
  436 U.S. 658 (1978) ............................................................................................ 20

*Nwosun v. General Mills Restaurants*,
  124 F.3d 1255 (10th Cir. 1997) .......................................................................... 16

*Payton v. Ballinger*,
  831 F. App'x 898 (10th Cir. 2020) .................................................................. 15-16

*Pickens v. Kunzweiler*,
  2016 WL 1651821 (N.D. Okla. Apr. 25, 2016) ................................................. 12

*Port City Properties v. Union Pac. R. Co.*,
  518 F.3d 1186 (10th Cir. 2008) ............................................................................ 6

*Reed v. Goertz*,
  598 U.S. 230 (2023) ........................................................................................ 18-19

*Robbins v. Oklahoma*,
519 F.3d 1242 (10th Cir. 2008).................................................................. 7

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923) .................................................................................... 4

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004) .................................................................................. 27

*Sandberg v. Englewood*,
727 F. App'x 950 (10th Cir. 2018) ........................................................... 21

*Schlup v. Delo*,
513 U.S. 298 (1995)..............................................................................24-25

*Schneider v. City of Grand Junction Police Dep't*,
717 F.3d 760 (10th Cir. 2013).................................................................. 20

*Segler v. Ross Mgmt. Group, Inc.*,
485 F. App'x 980 (10th Cir. 2012) ............................................................. 9

*Seibert v. Okla. ex rel. Univ. of Okla. Health Sci. Ctr.*,
867 F.2d 591 (10th Cir. 1989)............................................................... 8, 13

*Shero v. City of Grove*,
510 F.3d 1196 (10th Cir. 2007).................................................................. 7

*Skinner v. Switzer*,
562 U.S. 521 (2011) ........................................................... 9, 11-12, 19

*Snell v. Tunnell*,
920 F.2d 673 (10th Cir. 1990)................................................................. 17

*St. Louis Baptist Temple, Inc. v. FDIC*,
605 F.2d 1169 (10th Cir. 1979)................................................................. 2

*Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund*,
343 F.3d 1311 (10th Cir. 2003)............................................................ 8, 13

*Thayer v. McDonald*,
    781 P.2d 190 (Colo. App. 1989) ....................................................... 24-25

*Tonkovich v. Kansas Bd. of Regents*,
    159 F.3d 504 (10th Cir. 1994) ............................................................. 17

*Trusdale v. Bell*,
    85 F. App'x 691 (10th Cir. 2003) ........................................................ 16

*Wilkinson v. Dotson*,
    544 U.S. 74 (2005) .............................................................................. 15

*Worldwide Church of God v. McNair*,
    805 F.2d 888 (9th Cir. 1986) ............................................................... 13

**Statutes**

42 U.S.C. § 1983 .................................................................. 12, 14-18, 20

Colo. Rev. Stat. § 16-17-101 ............................................................... 27

Colo. Rev. Stat. § 18-1-411 ............................................................ 22-23

Colo. Rev. Stat. § 18-1-413 ................................................................. 22

Colo. Rev. Stat. § 18-1-416 ................................................................. 24

**Rules**

Fed. R. Evid. 201 ................................................................................... 2

Federal Rule of Civil Procedure 12 ................................................. 6, 9, 7

**Other Authorities**

HB 23-1034 ........................................................................................... 22

## STATEMENT OF RELATED CASES

There are no prior appeals or related cases in federal court regarding the claims in this case.

Defendant-Appellee Appellee Alexis King, District Attorney for the First Judicial District ("DA King") in her official capacity, respectfully submits the following Answer Brief.

## JURISDICTIONAL STATEMENT

DA King disputes that the District Court had jurisdiction over the claim against her as explained further below. DA King does not dispute the timeliness of the appeal filed in this Court.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the District Court correctly dismissed Appellant James Hunter's claim against DA King under the *Rooker-Feldman* doctrine.

2. Whether the District Court's decision may be affirmed on any of the following alternative grounds:

   a. *Heck v. Humphries*, 512 U.S. 477, 478 (1994), and *res judicata* bar Mr. Hunter's claims;

   b. Mr. Hunter failed to allege facts showing a conspiracy; and

   c. Mr. Hunter failed to allege facts supporting a basis for municipal liability.

3. Whether Mr. Hunter preserved the other arguments set forth in his Opening Brief, and if so, whether they warrant reversal of the District Court's decision.

## STATEMENT OF THE CASE

Over 22 years ago, the Lakewood Police Department arrested Mr. Hunter, and the District Attorney's Office prosecuted him for various crimes. (App. 20, ECF 39, ¶¶ 12-13); *see also* Jefferson County Court Case 2002CR3254 Docket Report. A jury convicted Mr. Hunter of multiple felonies, including burglary and sexual assault. (App. 12, ECF 39, ¶¶ 12-13; *see also* App. 59-61, Case 2002CR3254 Docket Report.)

As she did in the District Court, District Attorney King requests that the Court take judicial notice of the docket in Jefferson County Case 2002CR3254 (App. 59-61) and of the Colorado Court of Appeals' January 27, 2022 Opinion affirming the denial of Mr. Hunter's petition for new DNA testing (App. 62-76, "COA 2022 Op.").[1] The Opinion summarizes the state criminal proceedings, including Court of Appeals Cases 2004CA699, 2008CA316, 2017CA2112, and

---

[1] Per FED. R. EVID. 201, a court "may take judicial notice of undisputed court documents and matters of public record as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hansen v. Harper Excavating, Inc*., 641 F.3d 1216, 1219, n.2 (10th Cir. 2011) (citation omitted) (judicial notice may be taken "at any stage of the proceeding"). This rule applies to taking judicial notice of filings in related cases "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). Because Mr. Hunter challenges his state court criminal conviction, the court records associated with that conviction directly relate to his claims here and the District Court's consideration of them did not convert DA King's motion to dismiss into one for summary judgment.

2020CA993, and Colorado Supreme Court Cases 2010SC146, 2019SC411, and 2022SC220 (denying certiorari on Case 2020CA993).

Following his 2004 conviction, Mr. Hunter pursued a series of appeals in Colorado's state courts. Most recently, the Colorado Court of Appeals affirmed the state trial court's order denying Mr. Hunter's petition for new DNA testing. *People v. Hunter*, 20CA0993 (Colo. App. Jan 27, 2022) (unpublished) (App. 62-76). In May 2022, the Colorado Supreme Court declined certiorari, and Mr. Hunter's criminal convictions stand. (App. 27, ECF 39, ¶ 39.)

Mr. Hunter then filed an action in the District Court, seeking a declaration that Defendants have violated his due process rights, as well as an order to preserve and provide Mr. Hunter with access to certain evidence for DNA testing. Mr. Hunter's single due process claim alleged that DA King, among others, conspired with unnamed individuals to prevent DNA sample testing and concealed information regarding identification evidence. (App. 3-4, 15-21, *id*. ¶¶ 5, 7, 43-63.) He also alleged that DA King attempted to "cover up" former Colorado Bureau of Investigation Technician Woods' and others' "fabrication of evidence." (App. 20-21, *id*. ¶ 63.) The Amended Complaint was otherwise devoid of allegations against DA King. Critically, Mr. Hunter did not allege that DA King personally participated in any alleged constitutional violation, other than vague allegations regarding a "cover up" of Defendant Woods' alleged errors, or that those alleged

3

violations were a result of DA King's policies or customs. (*See id*.) Nor did he identify any facts to support DA King's involvement in a conspiracy or otherwise show a due process claim against her.

DA King moved to dismiss on the grounds that (1) the DA is not, and has never been, the custodian of the evidence at issue; (2) *Heck v. Humphrey*, 512 U.S. 477, 478 (1994), the *Rooker-Feldman* Doctrine,[2] and *res judicata* bar Mr. Hunter's claim; and (3) Mr. Hunter failed to allege sufficient facts to show either a conspiracy or an unconstitutional policy or custom for municipal liability. (App. 45-58.) The other Defendants moved to dismiss on similar grounds. (App. 37-44, 77-93, 132-144.)

Defendants' motions to dismiss were initially referred to Magistrate Judge Hegarty, who held a hearing on them, but before the Magistrate Judge issued a Report and Recommendation, the District Court withdrew the referral. (App. 10-12, ECF 49, 70, 71 (minute order entries).) The District Court issued an order granting Defendants' motions on to dismiss on April 19, 2024, finding that Mr. Hunter's claims were barred by the *Rooker-Feldman* doctrine:

> [T]he entire gist of the complaint is to suggest that the Colorado Court of Appeals made an incorrect determination when it found that a favorable DNA test result would not have been enough to make a showing of actual innocence. By impugning the other evidence used against him at trial, Plaintiff clearly intends to establish the inference that a favorable DNA test result would show

---

[2] *See Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

he is an innocent man. These facts, combined with Plaintiff's request for injunctive relief requiring the Defendants to conduct the same DNA testing he sought in his state court suit, suggest to me that Plaintiff essentially wants to relitigate an issue that was already decided in state court, and that I am therefore barred from assuming jurisdiction under the *Rooker-Feldman* doctrine.

. . .

Considering these facts and record as a whole, it is clear that Plaintiff satisfies all the requirements of the *Rooker-Feldman* doctrine: he is a state court loser, he complains of injuries caused by a state court judgment, this judgment was rendered before federal proceedings commenced, and Plaintiff invites federal review of this judgment. Plaintiff's suit must therefore be dismissed for lack of subject-matter jurisdiction.

(App. 180.) This appeal followed.

## SUMMARY OF THE ARGUMENT

Mr. Hunter appeals the District Court's dismissal of his single due process claim alleging that DA King, among others, conspired with unnamed individuals to prevent DNA sample testing and concealed information regarding identification evidence in connection with crimes occurring over 22 years ago. Mr. Hunter was found guilty of those crimes, and his convictions have never been overturned.

The District Court correctly found that it lacked jurisdiction over the claim against DA King because the *Rooker-Feldman* doctrine bars it. The District Court correctly found that Mr. Hunter was asking for federal review of a state court judgment after he had lost in state court, that he complained of injuries caused by a state court judgment, that the judgment of which he complained was rendered

before he commenced federal proceedings. None of the arguments advanced by the Opening Brief calls into question the District Court's analysis, and Mr. Hunter failed to raise below many of the arguments he now advances.

Moreover, the District Court's dismissal of the claim against DA King may be affirmed on the alternative grounds that: (1) the doctrines of *Heck* and *res judicata* bar the claims because Mr. Hunter already litigated his claims and lost in state court; (2) Mr. Hunter failed to allege facts to state a plausible conspiracy claim against DA King; and (3) he failed to allege facts showing *Monell* liability by failing to identify a policy or practice of the District Attorney's Office.

For all these reasons, this Court should affirm the District Court's dismissal of Mr. Hunter's claims.

## ARGUMENT

### I.     STANDARDS OF REVIEW

#### A.   Federal Rule of Civil Procedure 12

##### 1.     Rule 12(b)(1)

Rule 12(b)(1) governs dismissal for lack of subject matter jurisdiction. A plaintiff bears the burden of establishing subject matter jurisdiction. *See Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Challenges to subject matter jurisdiction assume two forms. First, the moving party may mount a "facial attack" that challenges the complaint's allegations as to the

"existence of subject matter jurisdiction." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). When a party mounts a facial attack, courts must accept a complaint's allegations as true. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Second, a party may go beyond the complaint's allegations by presenting evidence challenging the factual basis upon which subject matter jurisdiction rests. *Id.* at 1003 (citation omitted).

## 2.    Rule 12(b)(6)

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citation omitted). Nor, in this context, does "[p]lausible" mean "likely to be true;" rather, plausibility "must refer to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). "A pleading

that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

### B. This Court May Affirm on Any Ground Supported by the Record.

This Court has discretion to affirm the District Court's dismissal on any ground that is adequately supported by the record. *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004); *Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund,* 343 F.3d 1311, 1321 (10th Cir. 2003). In exercising that discretion, an appellate court considers whether the ground was fully briefed and argued on appeal and below, *see Bennett v. Spear,* 520 U.S. 154, 166-67 (1997); whether the parties have had a "fair opportunity to develop the [factual] record," *Seibert v. Okla. ex rel. Univ. of Okla. Health Sci. Ctr.,* 867 F.2d 591, 597 (10th Cir. 1989), *abrogated on other grounds by Fed. Lands Legal Consort. ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1195-96 (10th Cir. 1999); and whether the appellate court's decision would involve only questions of law or depend on disputed facts, *see Stillman*, 343 F.3d at 1321-22.

## II.   THE DISTRICT COURT CORRECTLY CONCLUDED THAT IT LACKED JURISDICTION OVER MR. HUNTER'S CLAIM UNDER THE *ROOKER-FELDMAN* DOCTRINE.

The *Rooker-Feldman* doctrine precludes federal court review of a direct challenge to a state court judgment. *Skinner v. Switzer*, 562 U.S. 521, 531-33 (2011); *Dawson v. Suthers*, No. 14-CV-01919-MSK-NYW, 2015 WL 5525786, *4 (D. Colo. Sept. 21, 2015) (unpublished). The *Rooker-Feldman* doctrine applies to cases where "[t]he losing party in state court filed suit in a U.S. District Court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment." *Skinner*, 562 U.S. at 531 (footnote omitted); *see also Segler v. Ross Mgmt. Group, Inc.,* 485 F. App'x 980, 980 (10th Cir. 2012) ("The *Rooker-Feldman* doctrine generally denies federal courts jurisdiction to adjudicate claims seeking the review of state court judgments." (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004) ("We now hold that the right disposition, when the Rooker-Feldman doctrine applies, is an order under FED. R. CIV. P. 12(b)(1) dismissing the suit for lack of subject-matter jurisdiction."))).

Most recently, Mr. Hunter asked the state courts to order "new DNA testing" because "a piece of DNA evidence used to convict him was 'highly suspect due to [a] break in the chain-of custody' and was 'unconvincing in light of advances in DNA technology.'" (App. 66, COA 2022 Op. ¶ 10.) He argued that the new DNA

testing would exclude him as the perpetrator of the crimes for which he stands

convicted.

In affirming the state district court's denial, the Colorado Court of Appeals

held:

> Hunter didn't adequately plead that favorable DNA testing would demonstrate his actual innocence. Although he speculates that new DNA testing could establish that the prior testing of one of the samples (which supposedly had been contaminated during a break in the chain of custody) resulted in a false positive, that still wouldn't negate the other sample from the scene that also matched his DNA profile. Nor would it negate the other evidence that supported the jury's verdict—including, in particular, evidence that he was in the vicinity of the crime scene at the time of the crimes, that his body size and features matched those of the perpetrator, that he was wearing clothes that fit the description of those worn by the perpetrator, and that the adult victim recognized his voice.
>
> Thus, additional testing would not demonstrate actual innocence, as it would not provide clear and convincing evidence such that no reasonable juror would have convicted Hunter of the crimes.
>
> Additionally, . . . Hunter didn't allege that conclusive DNA results were not available prior to his conviction. He alleged only that one of the two DNA samples that was presented at trial was contaminated and that additional testing with newer technology might show it didn't match his DNA profile. In reviewing Hunter's Crim. P. 35(c) appeal, a division of this court has already rejected his argument that the DNA evidence presented at trial wasn't conclusive. His challenges to the sufficiency and admissibility of that evidence, which the trial court and divisions of this court have rejected multiple times, don't satisfy his burden under section 18-1-413(1)(c)(I).

(App. 73, *id*. ¶¶ 28-30.)

Mr. Hunter now brings a federal court challenge to the state court determination that he is not entitled to further DNA testing. Although couched as a due process violation, as the District Court correctly held that his claim is *not* that any state DNA testing statute is facially unconstitutional (*see* App. 180 (noting that a single reference to the unconstitutionality of the statute was nothing more than a "threadbare assertion of a constitutional cause of action")) — nor is DA King the proper defendant for such a claim. Instead, he argued below that DA King was *violating* state law and that the lack of additional testing *in his case* violates due process. (App. 16-18, 21-22, ECF 39, ¶¶ 49, 54, 64.)

Other district courts in this Circuit have rejected similar arguments. The Northern District of Oklahoma held that the *Rooker-Feldman* doctrine barred an attempt to compel DNA testing:

> To the extent plaintiff includes these allegations in his complaint to persuade this Court to review and overturn the state court rulings denying his request for relief under the Postconviction DNA Act, his complaint must be dismissed, in part, under the *Rooker-Feldman* doctrine. *Skinner*, 562 U.S. [at 532]; *see also Erlandson v. Northglenn Mun. Ct*., 528 F.3d 785, 789 (10th Cir. 2008) ("[A] complaint filed in a federal district court that seeks review and reversal of a state-court judgment is properly dismissed under *Rooker-Feldman*."). As previously discussed, the state district court determined that plaintiff failed to make the necessary showings under [the state statutes] to obtain postconviction DNA testing. In this action, plaintiff nevertheless asks this Court to require defendant to provide him access to the same evidentiary items he sought access to through the motion he presented in state court. But the *Rooker-Feldman* doctrine bars "state-court losers" from "inviting district court review and rejection of the state court's judgments." *Skinner*, 562 U.S. at 532. . . .

11

> Thus, to the extent plaintiff urges this Court to review and reverse the state court decisions denying his request for access to certain evidentiary items for DNA testing, *Rooker-Feldman* bars his claim. As a result, the Court finds the complaint must be dismissed, in part, for lack of subject-matter jurisdiction.

*Huey v. Kunzweiler*, No. 20-CV-0021-CVE-FHM, 2020 WL 1325359, *4-5 (N.D. Okla. Mar. 20, 2020) (unpublished) (footnote omitted), *aff'd*, 847 F. App'x 530 (10th Cir. 2021); *Pickens v. Kunzweiler*, No. 15-CV-504-JHP-PJC, 2016 WL 1651821, *3 (N.D. Okla. Apr. 25, 2016) (unpublished) ("While the Court may consider challenges to state laws restricting individuals' access to potentially exculpatory DNA evidence on procedural due process grounds, this Court lacks subject matter jurisdiction to hear a suit directly challenging a state court's ruling." (citing *Skinner*, 562 U.S. at 532)).

Here, Mr. Hunter already sought DNA testing in state court. Although he reframed that relief below to seek an injunction preventing the destruction of DNA evidence, his claim nevertheless failed because he challenged the state court's ruling. *See Alvarez v. Attorney Gen. for the State of Fla*., 679 F.3d 1257, 1262-63 (11th Cir. 2012) (*Rooker-Feldman* doctrine precluded § 1983 claim challenging state courts' resolution of plaintiff's post-conviction applications for DNA testing).

Mr. Hunter's Opening Brief makes the quizzical argument that "the threshold question is whether the doctrine allows federal courts to entertain these adversary proceedings at all" and that the *Rooker-Feldman* doctrine stands for the

proposition that "federal district courts have 'no authority to review the final determination of a state court in judicial proceedings.'" (Aplt. Br. at 18 (quoting *Worldwide Church of God v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986)).) But that proves DA King's point and that on which the District Court relied in dismissing Mr. Hunter's claims—*i.e.*, that the *Rooker-Feldman* doctrine precludes jurisdiction here. By Mr. Hunter's own analysis, the District Court, and thus this Court, lack jurisdiction over his claims, requiring dismissal.[3]

## III. THE DISTRICT COURT'S DISMISSAL OF MR. HUNTER'S CLAIM MAY BE AFFIRMED ON THE ALTERNATVE GROUNDS THAT DA KING RAISED BELOW.

As explained in Part I.B. above, this Court may affirm on any ground if the ground was fully briefed and argued on appeal and below, *see Bennett,* 520 U.S. at 166-67; the parties had a "fair opportunity to develop the [factual] record," *Seibert,* 867 F.2d at 597; and the appellate court's decision involves only questions of law and does not depend on disputed facts, *see Stillman*, 343 F.3d at 1321-22. Here, the legal issues regarding the additional grounds for dismissal were fully briefed before the District Court; DA King is briefing them here and Mr. Hunter will have the opportunity to respond to them in his reply brief; and the issues of whether the

---

[3] In Part B.1 of his brief, Mr. Hunter makes additional arguments regarding the federal habeas statute and that he is invoking an "actual innocence as a gateway claim." (Aplt. Br. at 21-22.) As explained in Parts IV.B. and C. below, those claims were not preserved, and in any event, they similarly lack merit.

District Court had jurisdiction and the Complaint stated a claim and are legal issues that do not depend on any disputed facts. If this Court determines that *Rooker-Feldman* does not bar Mr. Hunter's claims, it should consider the following alternative arguments.

### A. *Heck* and *Res Judicata* also Bar Mr. Hunter's Claim.

In *Heck v. Humphrey*, the U.S. Supreme Court addressed "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under 42 U.S.C. § 1983." 512 U.S. 477, 478 (1994). There, the plaintiff alleged that state prosecutors and police officers engaged in unlawful acts which led to plaintiff's arrest and ultimate conviction. *Id*. at 479. The Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id*. at 487. If it does, the court must dismiss the complaint "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*.

*Heck* applies to claims for declaratory and injunctive relief. *See*, *e.g*., *Lawson v. Engleman*, 67 F. App'x 524, 526 (10th Cir. 2003) (*Heck* barred claims

for declaratory and injunctive relief under §§ 1983 and 1985). "[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Where, as here, the underlying convictions still stand and the state courts have rejected challenges to it, *Heck* bars DNA evidence claims:

> The district court properly applied the *Heck* doctrine to Payton's claims. As noted, his claims challenge the validity of his rape convictions. Indeed, he requests DNA retesting, release from custody, and release from further prosecution. But his conviction remains intact despite his multiple state and federal challenges. Hence, Payton's § 1983 claims are yet another attempt to attack this conviction.

*Payton v. Ballinger*, 831 F. App'x 898, 901 (10th Cir. 2020) (unpublished) (internal citations omitted).

As in *Payton*, Mr. Hunter has a valid, existing underlying conviction and sentence "tied to the conduct alleged in the § 1983 action." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007). The Colorado Court of Appeals denied Mr. Hunter's attempt to secure additional DNA testing, which is essentially the same relief he sought in federal court. Mr. Hunter's criminal convictions remain valid and a judgment in his favor would necessarily imply the invalidity of those convictions, as Mr. Hunter asserted below. (App. 30-32, ECF 39, ¶ 52 ("[t]he

15

above identified biological evidence will link the alternative suspect to [the crime]

. . . and exonerate Mr. Hunter of any wrongdoing."), ¶¶ 57-59.) Therefore, *Heck*

bars his claim. *See Payton*, 831 F. App'x at 901; *Trusdale v. Bell*, 85 F. App'x 691,

693 (10th Cir. 2003) (unpublished) (holding that *Heck* barred prisoner's § 1983

claim alleging an unlawful search because evidence obtained pursuant to the search

led to his convictions); *Baldwin v. O'Connor*, 466 F. App'x 717, 717-18 (10th Cir.

2012) (affirming dismissal under *Heck* of search and seizure claim where no injury

alleged other than conviction and imprisonment).

Established *res judicata* principles also bar Mr. Hunter's claims. *See*

*Nwosun v. General Mills Restaurants*, 124 F.3d 1255, 1257 (10th Cir. 1997) (res

judicata elements); *Bravo-Fernandez v. United States*, 580 U.S. 5, 11 n.2 (2016)

(describing res judicata as "embrac[ing] both claim and issue preclusion"). In

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005), the

Supreme Court held that the *Rooker-Feldman* doctrine complements the preclusion

doctrine because it bars a losing party in state court from seeking what in substance

would be appellate review of the state judgment in a federal district court that is

based on a claim that the state judgment itself violates the loser's federal rights.

Here, the Colorado Court of Appeals denied essentially the same relief Mr.

Hunter now seeks from this Court—*i.e.*, additional DNA evidence testing. Rather

than allowing those claims to be relitigated in federal court, the District Court

properly dismissed them. This Court should affirm.

**B.    Mr. Hunter Did Not Allege Facts Plausibly Showing a Due Process Conspiracy Claim, and his Claim Against DA King Was Subject to Dismissal Under Rule 12(b)(6).**

**1.    The Complaint Did Not Plausibly Allege a Conspiracy.**

The constitutional claim against DA King is based solely on her alleged

involvement in a conspiracy to misidentify Mr. Hunter as the perpetrator and to

prevent DNA sample testing. (App. 16-17, 20-21, ECF 39, ¶¶ 5, 7, 62-63.) Mr.

Hunter did not allege facts plausibly showing a conspiracy claim, and the District

Court's ruling may be affirmed on this alternative ground.

The elements for a § 1983 conspiracy claim are: "(1) a shared conspiratorial

objective (the agreement to deprive the Plaintiff of a constitutional or statutory

right); (2) concerted action by the Defendants; and (3) an actual deprivation of

rights." *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990). "Conclusory

allegations of conspiracy are insufficient to state a valid § 1983 claim." *Tonkovich

v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1994). As the Supreme

Court held in *Twombly*:

> [A]n allegation of parallel conduct and a bare assertion of conspiracy will not
> suffice. Without more, parallel conduct does not suggest conspiracy, and a
> conclusory allegation of agreement at some unidentified point does not supply
> facts adequate to show illegality. Hence, when allegations of parallel conduct
> are set out ... they must be placed in a context that raises a suggestion of a

17

preceding agreement, not merely parallel conduct that could just as well be independent action.

550 U.S. at 556-57.

Thus, to state a claim for conspiracy under § 1983, a plaintiff must "allege specific facts showing agreement and concerted action among defendants." *Durre v. Dempsey,* 869 F.2d 543, 545 (10th Cir. 1989). "[A]n allegation of parallel conduct absent context implying a meeting of the minds" is, by itself, insufficient to withstand a motion to dismiss." *Gee v. Pacheco,* 627 F.3d 1178, 1183 (10th Cir. 2010); *see also Afola v. Corr. Corp. of Am.*, No. 12CV02394-JLK, 2013 WL 2477126, *4 (D. Colo. June 10, 2013) (unpublished) (citing *id.*).

Here, Mr. Hunter failed to allege a conspiracy claim because he lacked any allegations plausibly showing DA King's involvement in a shared conspiratorial objective, concerted action, or actual deprivation of rights. Nor did Mr. Hunter allege facts showing her actual participation in a conspiracy. This failure provides an alternative ground for the Court to affirm the District Court.

## 2.    Mr. Hunter did not Plead Facts Showing a Due Process Violation.

To show a due process violation, a plaintiff must allege facts showing: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023) (citation omitted). Mr. Hunter did not alleged facts plausibly showing either element. While

he has been deprived of his liberty, he has alleged no facts plausibly showing that

that deprivation was a result of DA King's unconstitutional actions. And, as

explained above, Mr. Hunter has received all process he was due during his trial,

direct appeals, and collateral attacks on his convictions in state court.

As the *Reed* Court noted:

> This Court's case law "severely limits the federal action a state prisoner may
> bring for DNA testing." *Skinner*[], 562 U.S. [at] 525. The Court has "rejected
> the extension of substantive due process to this area, and left slim room for
> the prisoner to show that the governing state law denies him procedural due
> process." *Ibid.* (citation omitted); *see District Attorney's Office for Third
> Judicial Dist. v. Osborne*, 557 U.S. 52, 69, 72, 129 S. Ct. 2308, 174 L.Ed.2d
> 38 (2009).

598 U.S. at 235. The *Reed* Court allowed the case to proceed because the petitioner

was challenging the constitutionality of a state statute itself. *See id*.

Here, Mr. Hunter sought to have the District Court overrule the state courts

by ordering the preservation and testing of DNA evidence. He has not taken the

appropriate steps, or sued the proper defendants, to challenge the constitutionality

of the statute. This Court may affirm the decision to dismiss his claim against DA

King on this alternative ground.

### C.   Mr. Hunter Failed to State a Claim for Municipal Liability.

Finally, this Court should affirm the dismissal of DA King on the alternate

grounds that the Complaint failed to allege a plausible municipal liability claim.

Mr. Hunter sued DA King in her official capacity only. "The Supreme Court has

instructed that official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Coates v. Reigenborn*, No. 22-1339, 2023 WL 6810961, *3 (10th Cir. Oct. 16, 2023) (unpublished) (punctuation and internal citation omitted).

Government entities can be sued only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury the government as an entity is responsible under § 1983." *Id.* at 694.

Under such a theory, a plaintiff must establish: (1) an official policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013); *see also Cacioppo v. Town of Vail*, 528 F. App'x 929, 931 (10th Cir. 2013) (municipal liability requires plaintiff to (1) "identify a government's policy or custom" and (2) "show 'that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury.'" (quoting *id.*)); *Leonhard v. Correct Care Sols., LLC*, No. 19-cv-00600-PAB-STV, 2020 WL 1694377, *8 (D. Colo. Apr. 7, 2020) (unpublished) (to raise a *Monell* claim, "a plaintiff should [identify and] set out the

text of that policy") (citing *Sandberg v. Englewood*, 727 F. App'x 950, 964 (10th Cir. 2018)).

A policy or custom giving rise to a *Monell* claim may be shown by the existence of:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that ... is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions–and the basis for them–of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and alteration omitted). Moreover, to succeed, a plaintiff must identify a particular theory of municipal liability. *Cacioppo*, 528 F. App'x at 934 (declining to recognize "amorphous hybrid theory" of municipal liability).

Here, Mr. Hunter failed to allege facts establishing any of the elements of a *Monell* claim. He failed to make even conclusory allegations identifying a District Attorney's Office policy or custom. Because he did not identify such a policy, he did not allege facts showing causation. And he made no allegations whatsoever regarding DA King's state of mind. This Court should affirm the dismissal of his claim against DA King on this alternative ground.

## IV.    MR. HUNTER'S REMAINING ARGUMENTS WERE NOT PRESERVED AND LACK MERIT.

### A.    The Issues Regarding the 2023 Amendment to the DNA Testing Statutes were not Preserved.

The Opening Brief makes sweeping statements that unidentified changes to the DNA testing statute in 2023 addressed the unconstitutionality of the prior version of the statute. It then argues that the District Court erroneously relied on the 2022 Colorado Court of Appeals opinion that examined the allegedly unconstitutional version of the statute that was in effect at the time. (Aplt. Br. at 23-24.)

The changes to COLO. REV. STAT. § 18-1-411 that Mr. Hunter references went into effect on October 1, 2023, *more than six months before the District Court's decision in this case*. *See* 2023 Colo. Legis. Serv. Ch. 15, section 9, Effective date (HB 23-1034). Yet, Mr. Hunter never made this argument before the District Court. Instead, he mentioned once, in passing, that the "2020 version of C.R.S § 18-1-413 . . . has been substantially modified, and therefore is bad law with no preclusive effect." (App. 103.) He made no real allegations challenging the constitutionality of the version of the statute in effect in 2022. This argument is therefore waived, and this Court should not consider it.

But even if he had preserved this argument, Mr. Hunter does not develop it here in any meaningful way for Appellees or this Court to address it.[4] He does not specify what the changes are or what provisions existed in the prior version of the statute that he contends were unconstitutional and why. The prior version of the statute required a showing of "actual innocence" whereas the new version of that statute requires a showing of a "favorable result," which is defined as "a reasonable probability that the petitioner would not have been convicted." *Compare* COLO. REV. STAT. § 18-1-411(1) (2022) *with* § 18-1-411(3.5) (2023). Mr. Hunter does not state, and DA King does not believe, that he has brought a new petition under the revised statute. Nor does he show how he had a liberty interest in 2022 in a future, unenacted version of the statute.

Finally, Mr. Hunter ignores the fact that the Colorado Court of Appeals relied on the version of the statute that was in effect at the time of its decision. If Mr. Hunter believes he has a valid claim under the new revisions to the DNA testing statute codified after the state appellate decision, he may pursue the newly

---

[4] To the extent that he believes that the statute is unconstitutional under *District Attorney's Office for Third Judicial Dist. v. Osborne,* 557 U.S. 52 (2009), this Court has rejected that argument noting that "Colorado has 'flexibility in deciding what procedures are needed in the context of postconviction relief.'" *McDaniel v. Suthers*, 335 F. App'x 734, 736 (2009) (quoting *Osborne*). This Court held that "'[w]e see nothing inadequate about the procedures [Colorado] has provided to vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to those who seek access to DNA evidence.'" *Id*. (quoting *Osborne*).

provided remedies under the statute in state court. The revisions to the statute specifically contemplate such a scenario and provide that any rules regarding timeliness or bars to "successive" petitions do not apply to requests under the new statute. COLO. REV. STAT. § 18-1-416. But Mr. Hunter cannot shoehorn any relief that he has not yet sought in state court—*i.e.*, under the new statutory standards— into a section 1983 claim against DA King in this case.

### B.    The Arguments Regarding Colorado's Clemency Laws were not Preserved and Lack Merit.

In his opening brief, Mr. Hunter argues that his request for DNA testing is a "gateway claim" to his right to pursue an actual innocence claim and thus there is no procedural bar to him proceeding with the claim. (Aplt. Br. at 32-33.) In support of that argument he cites *Schlup v. Delo,* 513 U.S. 298 (1995), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013), and then makes several factual assertions regarding the scientific status of DNA testing that lack record support. (Aplt. Br. at 11-12.)

This issue was not preserved below. There is no citation to either *Schlup* or *McQuiggin* in the Amended Complaint or the responses that Mr. Hunter filed to the motions to dismiss. Similarly, the word "gateway" is not found in either the Amended Complaint or in Mr. Hunter's responses to the motions to dismiss.

Mr. Hunter seemingly admits (Aplt. Br. at 31) that he did not preserve this issue, and relies on *Thayer v. McDonald*, 781 P.2d 190 (Colo. App. 1989), to make

the misguided claim that he can raise these arguments now because they relate to subject matter jurisdiction. However, *Thayer* addressed the *defense* of lack of subject matter jurisdiction—*i.e.*, the defendants were arguing (as DA King argues here) that the Court lacked subject-matter jurisdiction because of the *Rooker-Feldman* doctrine. The Court made the unremarkable holding that the Thayers (as defendants) could raise the lack of subject matter jurisdiction at any time, even if they had not raised it below. *Id*. at 190. *Thayer* offers no support to a plaintiff who is affirmatively asking a federal court to provide it with relief from a state court judgment and raising an argument not raised below. Indeed, if Mr. Hunter truly contends that there is no subject-matter jurisdiction over his claims, then it necessarily follows that the case was properly dismissed. *Thayer* provides no support for his arguments about waiver.

But even if this argument had been preserved, it lacks merit. *Schlup* and *McQuiggin* do nothing to save Mr. Hunter's claims. Although Mr. Hunter does not clearly articulate his "gateway" theory, the Supreme Court has held that for habeas petitions, a petitioner's actual innocence, if proved, serves as a gateway through which a petitioner may pass to overcome a procedural bar, *see Schlup* v. *Delo*, 513 U.S. at 315; *House* v. *Bell*, 547 U.S. 518 (2006), or the expiration of the one-year statute of limitations, as in *McQuiggin*.

This case is not a habeas case; it is a section 1983 case. Defendants did not raise a statute of limitations defense in this case. And the District Court did not dismiss Mr. Hunter's claims based on a "procedural bar" or the statute of limitations. The lower court dismissed the case based on the *Rooker-Feldman* doctrine. *Schlup* and *McQuiggin* have no relevance here.

Without citation to legal authority, Mr. Hunter asserts that state "noncapital defendants have a state created liberty interest in review for executive clemency." (Aplt. Br. at 25.) But *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458 (1981), the case he cites two sentences later, actually refutes his position. In *Dumschat,* the Supreme Court reviewed whether there was a liberty interest in Connecticut inmates' commutation requests. It summarized prior case law and found that there was no liberty interest:

> Moreover, from the standpoint of a reasons requirement, there is a vast difference between a denial of parole—particularly on the facts of *Greenholtz*—and a state's refusal to commute a lawful sentence. When Nebraska statutes directed that inmates who are eligible for parole "shall" be released "unless" a certain finding has been made, the statutes created a right. By contrast, <u>the mere existence of a power to commute a lawfully imposed sentence, and the granting of commutations to many petitioners, create no right or "entitlement."</u> A state cannot be required to explain its reasons for a decision when it is not required to act on prescribed grounds. <u>We hold that the power vested in the Connecticut Board of Pardons to commute sentences conferred no rights on respondents beyond the right to seek commutation.</u>

452 U.S. at 466-67 (emphasis added). Mr. Hunter's assertion that *Dumschat* stands for the proposition that the Colorado Governor's discretionary commutation provisions found in COLO. REV. STAT. § 16-17-101 create an enforceable liberty interest in a section 1983 case is a fundamental misreading of this case.

Mr. Hunter makes no other substantive arguments to support his position. Mr. Hunter has shown no grounds under Colorado clemency laws to reverse the District Court's decision. This Court should affirm.

### C.   The Arguments Regarding Federal Habeas Laws were not Preserved and are Irrelevant.

Mr. Hunter also relies on federal habeas corpus law. (Aplt. Br. at 29-30.) But he did not bring a federal habeas petition in this case. Instead, he brought a single official-capacity due process claim based on an alleged conspiracy. Any arguments regarding federal habeas are inapplicable to such an action. Moreover, DA King would not be an appropriate defendant for a habeas petition even if Mr. Hunter had pursued such a claim. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (proper respondent for a habeas petition is warden of prison).

### D.   Mr. Hunter's Arguments Regarding the "Bad Faith Prosecution Exception" Fail.

Finally, Mr. Hunter argues that he is entitled to some sort of "bad faith prosecution exception" under which he may prevail by "show[ing] actual innocence for the purpose of state and Federal Habeas Corpus review." (Aplt. Br.

at 34-38.) While the exact contours of this argument are unclear, the Opening Brief seems to argue that Mr. Hunter stated a claim under section 1983. However, as noted above, the District Court concluded that the *Rooker-Feldman* doctrine barred his claim and did not reach the issue of its legal sufficiency from a pleading perspective. None of the arguments in this section of the Opening Brief undermine DA King's failure-to-state-a-claim arguments.

Similarly, Mr. Hunter makes undeveloped arguments regarding alleged *Brady* violations related to discovery during the criminal case. (Aplt. Br. at 13, 26-29.) This argument was not developed below and does not establish a section 1983 official-capacity claim against DA King.

DA King's Rule 12(b)(6) arguments provide alternative grounds to affirm the dismissal of the claim against her. Although Mr. Hunter fails to articulate how a "bad faith prosecution exception" saves his claims, there is nothing about this argument that alters the fact that the Complaint did not plausibly allege a conspiracy, a due process violation, or municipal liability. This Court may affirm on this alternative ground.

## CONCLUSION

The Court should affirm the District Court's decision dismissing DA King from this action.

Respectfully submitted this 12th day of November, 2024.

JEFFERSON COUNTY ATTORNEY'S OFFICE

*s/ Amy Padden*
Amy Padden
Rebecca Klymkowsky
Jefferson County Attorney's Office
100 Jefferson County Parkway, Suite 5500
Golden, Colorado 80419
T: 303.271.8933
E: apadden@co.jefferson.co.us
E: rklymkow@co.jefferson.co.us
*Counsel for District Attorney Alexis King*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P.

32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P.

32(f), it is less than 30 pages in length.

November 12, 2024

*s/ Amy Padden*
Amy Padden
Rebecca Klymkowsky
Jefferson County Attorney's Office
100 Jefferson County Parkway, Suite 5500
Golden, Colorado 80419
T: 303.271.8933
E: apadden@co.jefferson.co.us
E: rklymkow@co.jefferson.co.us
*Counsel for District Attorney Alexis King*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2024, I filed and served a true and correct copy of **APPELLEE ALEXIS KING'S ANSWER BRIEF** via PACER's electronic court filing system.

/s/William Griego
William Griego, Paralegal