# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| JAMES HUNTER, | Appeal No. 24-1210 |
| v. | |
| ALEXIS KING, District Attorney for the 1st Judicial District, | District Court Case No. 1:23-cv-02989-DDD-MEH |
| CHRIS SCHAFFER, Director of the Colorado Bureau of Investigations, | |
| CHIEF SMITH, Lakewood Police Chief, | |
| YVONNE M. WOODS, Officer, laboratory technician of the Colorado Bureau of Investigations, | |

## APPELLEE CHRIS SCHAEFER'S ANSWER BRIEF

Appeal from the United States District Court

Civil Action No. 1:23-cv-02989-DDD-MEH (D. Colo.)

District Court Judge Daniel Domenico

Oral Argument is not requested

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF RELATED CASES ........................................................................iv

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ..................................1

STATEMENT OF THE CASE..................................................................2

SUMMARY OF THE ARGUMENT ............................................................3

ARGUMENT .....................................................................................5

  I. STANDARDS OF REVIEW.................................................................5

  II. DIRECTOR SCHAEFFER JOINS ALL OF DA KING'S ARGUMENTS EXCEPT THE ONES RELATING SOLELY TO THE ALLEGATIONS AGAINST HER. ..................................................................................5

  III. HUNTER'S COMPLAINT FAILED TO ALLEGE SUFFICIENT NON-CONCLUSORY FACTS TO ESTABLSIH THAT DIRECTOR SCHAEFER WAS INVOLVED IN A CONSPIRACY TO VIOLATE HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHTS IN VIOLATION OF § 1983. ......................................................................6

  IV. HUNTER'S ARGUMENT BASED ON THE CONSTITUTIONALITY OF THE PRE-AMENDMENT VERSION OF COLORADO'S DNA TESTING STATUTE DOES NOT PROVIDE GROUNDS FOR RELIEF.........9

  V. THERE ARE NO ALLEGATIONS THAT ANY ALLEGED MIDCONDUCT BY WOODS IS RELEVANT TO HUNTER'S CONVICTION..................................................................................15

CONCLUSION ..................................................................................18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT.......................20

CERTIFICATE OF SERVICE ................................................................21

i

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................7, 8

*Brady v. Maryland*, 373 U.S. 83 (1963)....................................................................4, 16

*Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119 (10th Cir. 1994).....................................7

*District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) .............................................................................. 2, 3, 11, 12, 13, 14, 15, 16

*Dixon v. City of Lawton*, 898 F.2d 1443 (10th Cir. 1990) .............................................6

*Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012)..................................................9

*McDaniel v. Suthers*, 335 F. App'x 734 (10th Cir. 2009) ............................ 2, 4, 13, 14

*Medina v. California*, 505 U.S. 437 (1992) ..................................................................11

*Osborne v. State*, 110 P.3d 986 (Alaska Ct. App. 2005) ..............................................12

*Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989) ..................................................................9

*Salehpoor v. Shahinpoor*, 358 F.3d 782 (10th Cir. 2004) .............................................7

*Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990) .......................................9

*Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) .........................................................6, 7

*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1994)............................7

**STATUTES**

42 U.S.C. § 1983 ............................................................................................................2

Colo. Rev. Stat. (2022) § 18-1-413 ................................................................. 12, 13, 15

Colo. Rev. Stat. § 18-1-413.......................................................................... 2, 3, 10, 14

## TABLE OF AUTHORITIES

**PAGE**

**RULES**

CO ST RPC Rule 3.8 .....................................................................................................17

**STATEMENT OF RELATED CASES**

Director Schaefer joins[1] Defendant-Appellee Alexis King's ("DA King")

Answer Brief in stating that there are no prior appeals or related cases in federal

court regarding the claims in this case.

---

[1] As will be apparent herein, Director Schaefer joins much of DA King's Answer Brief.

Appellee Chris Schaefer,[2] Director of the Colorado Bureau of Investigations ("Director Schaefer" for the "CBI") in his official capacity, respectfully submits the following Answer Brief.

## JURISDICTIONAL STATEMENT

Director Schaefer states that – as was the case as to DA King – the District Court below lacked jurisdiction over the claim against him, for the same reasons as it lacked jurisdiction over DA King. Director Schaefer likewise does not dispute the timeliness of the appeal filed in this Court.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Director Schaefer joins the Statement of Issues Presented for Review set forth in DA King's Answer Brief. In addition, Director Schaefer states the following issues presented for review:

1.  Whether, in the alternative to dismissal under *Rooker-Feldman* grounds, the District Court decision below may be affirmed by this Court for the following reasons:

    a.  As was the case with respect to DA King, for substantially similar reasons, Hunter's Complaint in the District Court below failed to

---

[2] In Plaintiff-Appellant Hunter's initial lawsuit, and in the instant appeal, the captions in those cases misspell Director Schaefer's name as "Schaffer." Director Schaefer uses the correct spelling herein.

state a cognizable conspiracy claim against Director Schaefer
under 42 U.S.C. § 1983;

b.  Despite Hunter's unsupported argument to the contrary, the prior
version of the applicable Colorado DNA testing statute (section
18-1-413, COLO. REV. STAT.), under which Hunter contends that
his prior request to have DNA found at his crime scene tested was
denied, is constitutional pursuant to *District Attorney's Office for
Third Judicial Dist. v. Osborne*, 557 U.S. 52 (2009) and *McDaniel
v. Suthers*, 335 F. App'x 734 (10th Cir. 2009); and

c.  Despite vague and broad allusions to a current controversy or
scandal involving Defendant-Appellee Woods in the course of her
involvement with DNA testing conducted by CBI, Hunter failed to
specifically allege in a non-conclusory fashion that any such
purported misconduct related to DNA testing impacted his
underlying criminal conviction.

## STATEMENT OF THE CASE

Director Schaefer joins the Statement of the Case set forth in DA King's
Answer Brief.

## SUMMARY OF THE ARGUMENT

Director Schaefer joins the arguments asserted by DA King in her Answer Brief with two narrow exceptions. First, DA King's arguments concerning municipal liability do not apply to Director Schaefer, CBI, or the State of Colorado because they are not municipalities, municipal agencies or sub-agencies, or municipal officials. Second, DA King's argument that Hunter failed to plead facts in his Complaint establishing that DA King participated in a conspiracy to violate his constitutional rights pursuant to § 1983 necessarily would not apply to Director Schafer. Nonetheless, for substantially similar reasons, Hunter also failed to allege sufficient facts in his operative pleading below that would be enough to state such a conspiracy claim against Director Schaefer.

In addition, Director Schaefer raises two additional arguments. First, in his Opening Brief, Hunter argues that the prior version of Colorado's DNA testing statute – section 18-1-413, COLO. REV. STAT. – which he contends is the law governing his initial request to have the DNA found at his crime scene retested, was unconstitutional as evidenced by the fact that it was subsequently amended. (Op. Br. at 23-24.) This position is meritless. To the contrary, the pre-amendment version of the foregoing statute was entirely constitutional under the DNA testing parameters set forth by the U.S. Supreme Court in *Osborne*. Indeed, the constitutionality of this statute was specifically addressed by the Tenth Circuit in

*McDaniel*, which held that the statute met the due process requirements imposed by the Supreme Court in its 2009 decision.  As such, even if Hunter had made this argument concerning the constitutionality of the prior version of the statute in the District Court below – and he did not – it necessarily would have failed.

Second, throughout his Opening Brief, Hunter alludes to a current purported DNA laboratory testing controversy or scandal involving Woods, who was a CBI laboratory technician at the time of Hunter's investigation, trial and conviction.  He implies that because Woods currently may be involved in this controversy involving her work on DNA testing at the CBI laboratory, it automatically renders his prior 2002 conviction suspect.  He further contends that this controversy constitutes potentially exculpable evidence that must be disclosed pursuant to *Brady v. Maryland*.  The problem for Hunter – in addition to the fact that the U.S. Supreme Court had expressly held that *Brady* does not apply in the post-conviction setting – is that this sort of *ex post facto* "guilt by implication" does not substitute for specific alleged facts establishing that Woods' current imbroglio involves purported misconduct *directly related to Hunter's original conviction*.  And absent any such allegation, cryptic allusions to her current scandal or controversy are simply irrelevant.

Therefore, for the reasons set forth in DA King's Answer Brief, and those additionally stated herein, this Court should affirm the District Court's dismissal of Hunter's claims.

## ARGUMENT

### I.    STANDARDS OF REVIEW

Director Schaefer concurs with the Standard of Review set forth in DA King's Answer Brief, and therefore he joins the same.

### II.    DIRECTOR SCHAEFFER JOINS ALL OF DA KING'S ARGUMENTS EXCEPT THE ONES RELATING SOLELY TO THE ALLEGATIONS AGAINST HER.

As an initial matter, Director Schaefer believes that the various arguments made by DA King in her Answer Brief are well-founded, and – with the two narrow exceptions that are specific to DA King – joins them all. This primarily includes the argument that the District Court correctly determined that it lacked jurisdiction over Hunter's lawsuit pursuant to the *Rooker-Feldman* doctrine.  (King Ans. Br. at 9-13.)  It also includes the following arguments that, in the alternative, also would be sufficient to affirm the District Court's dismissal below: (1) the argument that Hunter's claim is barred by *Heck* and the doctrine of *res judicata* (*Id.* at 14-17); (2) the argument that Hunter did not plead facts sufficient to show a due process violation (*Id.* at 17-18); (3) the argument that Hunter's contentions regarding the 2023 amendment to the Colorado DNA statute were not preserved

(*Id.* at 22-24); (4) the argument that Colorado's clemency laws were not preserved and lack merit (*Id.* at 24-27); (5) the argument regarding federal *habeas* laws were not preserved and lack merit (*Id.* at 27); and (6) the arguments regarding "bad faith prosecution" were not preserved and lack merit (*Id.* at 27-28).

### III.   HUNTER'S COMPLAINT FAILED TO ALLEGE SUFFICIENT NON-CONCLUSORY FACTS TO ESTABLSIH THAT DIRECTOR SCHAEFER WAS INVOLVED IN A CONSPIRACY TO VIOLATE HIS FOURTEENTH AMENDMENT DUE PROCESS RIGHTS IN VIOLATION OF § 1983.

As noted above, in her Answer Brief, DA King argues that Hunter failed to allege sufficient facts to establish her involvement in a conspiracy to violate his due process rights in violation of § 1983.  (King Ans. Br. at 17-18.)  Because Director Schaefer is not DA King, that argument necessarily would not apply to him.  Nonetheless, for a substantially similar reason, Hunter *also* failed to state a § 1983 conspiracy claim against Director Schaefer.

"[A] conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law" pursuant to § 1983 is actionable.  *See Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (quoting *Dixon v. City of Lawton*, 898 F.2d 1443 (10th Cir. 1990)) (internal quotations omitted).  In order to prevail on such a claim, the plaintiff "must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."  *Id*.  In that regard, "a conspiracy [ ] requires the combination of two

or more persons acting in concert." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) (internal quotations and citations omitted); *accord Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004).  In order to sufficiently plead a § 1983 conspiracy claim, a plaintiff is required to allege – whether by direct or circumstantial evidence – a meeting of the minds or agreement among the defendants.  *See Salehpoor*, 358 F.3d at 789.

Moreover, the elements for a § 1983 conspiracy claim are: "(1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights." *Snell,* 920 F.2d at 702. "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Tonkovich v. Kansas Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1994). Additionally, the allegations of a conspiracy in violation of § 1983 must be made with some degree of factual specificity; as the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007):

> [A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice. Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out ... they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Id.* at 556-57.

In that regard, the *sole* allegation in Hunter's Complaint concerning Director Schaefer's involvement in an alleged conspiracy to violate his Fourteenth Amendment due process rights in violation of § 1983 is that he was "aware of [Hunter's] actual and factual innocence but has conspired with local law enforcement to prevent the testing of all biological evidence that could substantiate [his] actual innocence… thereby, depriving him of due process guaranteed under the Fourteenth Amendment." (App. 17.) There is no other allegation describing Director Schaefer's involvement with the purported conspiracy.

And that assertion is precisely the sort of purely conclusory allegation that the Supreme Court held in *Twombly* to be insufficient to state a § 1983 conspiracy claim. The only allegation addressing Director Schaefer's purported involvement merely states that he was involved in a conspiracy to prevent the testing of Hunter's DNA; it does not say – among other things – when he reached an agreement to engage in such a conspiracy, who was involved in that agreement, what specifically he was expected to do (or what he expected others to do) to further the conspiracy, or the motivations underlying the conspiracy. Yet merely alleging the existence of a conspiracy without including any *specific facts* from which a court could infer the parameters, timing, membership, members' responsibilities, or methods to be used in furtherance of the purported conspiracy is a prime example of the sort of conclusory allegation that federal courts reject. *See*

*e.g., Lacey v. Maricopa Cty.*, 693 F.3d 896, 937 (9th Cir. 2012) ("The conclusory conspiracy allegations in the original complaint do not define the scope of any conspiracy involving [the defendant], what role he had, or when or how the conspiracy operated. They are insufficient to implicate [the defendant]…."); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990) ("A mere allegation of conspiracy without factual specificity is insufficient to support a claim."); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989) ("[t]he allegations [of conspiracy] must be sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy" (internal quotation omitted).).

Put simply, Hunter's threadbare allegation that Director Schaefer was involved in some amorphous conspiracy to deprive him of his Fourteenth Amendment rights is not enough to state a § 1983 conspiracy claim against him. Even if *Rooker-Feldman* did not deprive the District Court of jurisdiction over his claim, his Complaint failed to allege facts sufficient to state that sort of claim, and this Court can affirm the dismissal below on those grounds as well.

### IV.  HUNTER'S ARGUMENT BASED ON THE CONSTITUTIONALITY OF THE PRE-AMENDMENT VERSION OF COLORADO'S DNA TESTING STATUTE DOES NOT PROVIDE GROUNDS FOR RELIEF.

Second, Hunter appears to contend in his Opening Brief that the 2022 decision by the Colorado Court of Appeals was based on a prior version of the

Colorado DNA testing statute – section 18-1-413, COLO. REV. STAT. – which was

subsequently amended in 2023 in order (according to Hunter) to lower the

standards applicable to DNA testing requests. (Op. Br. at 23-24.) Hunter asserts

that this statutory amendment constitutes "recognition" by the Colorado state

legislature that the prior version was unconstitutionally restrictive, thus implying

that the state appellate decision applying that prior statute to his petition for DNA

testing was premised on an illegitimate basis. This argument also has no merit and

must be rejected.

As an initial matter, and as noted in DA King's Answer Brief, Hunter did

not raise this argument in the District Court proceedings below, despite the fact

that the new version of the DNA testing statute became effective in 2023, well

before the District Court decision currently being appealed was handed down.

Instead, the grand total of his discussion of the issue was a passing reference to the

fact that the DNA testing statute in place at the time of his state court petition

subsequently had been amended and therefore was "bad law with no preclusive

effect." (App. 103.) Therefore, Hunter has waived this argument, and it was not

preserved for review.

Moreover, and perhaps more importantly, even if Hunter *had* preserved the

argument that the standards applied by the pre-amendment version of section 18-1-

413, COLO. REV. STAT., unconstitutionally violated his Fourteenth Amendment due

process rights, it would fail on its merits.  In *Osborne*, the U.S. Supreme Court set forth the due process requirements applicable to individuals convicted of a crime who are seeking post-conviction relief; it noted from the outset that a convicted individual's "right to [post-conviction due process is not parallel to a trial right, but rather must be analyzed in light of the fact that [the individual] has already been found guilty at a fair trial, and *has only a limited interest in postconviction relief*." 557 U.S. at 69 (emphasis added).[3]

Instead, the *Osborne* Court specified that "the question is whether consideration of [an inmate's] claim [for post-conviction DNA testing] within the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'"  *Id.* (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)).  Or, in other words, federal courts may upend a state's post-conviction relief regime – including post-conviction DNA testing – only if it is fundamentally inadequate to vindicate the substantive rights provided.  *Id.*

---

[3] Notably, and as discussed below in more detail, the *Osborne* court *expressly* rejected the notion – advanced by Hunter in his Opening Brief – that the *Brady* requirement that a state must disclose exculpatory evidence would apply to post-conviction proceedings.  *Id.* (holding that in post-conviction proceedings, "*Brady* is the wrong framework").

In that case, the *Osborne* Court focused on the Alaska post-conviction regime in question, which provided a substantive right to be released on a sufficiently compelling showing of new evidence (including DNA testing) *that establishes innocence*. *Id.* at 70 (describing Alaska's statutory postconviction remedies). Moreover, the Supreme Court noted that in addition to that statutory regime, the Alaska courts had suggested that there might be an independent right to post-conviction DNA testing under the Alaska Constitution. *Id.* (citing *Osborne v. State*, 110 P.3d 986, 995-96 (Alaska Ct. App. 2005)). The Court concluded that this statutory mechanism to seek release based on new evidence (including DNA testing), especially combined with the potential independent state constitutional right, easily met the due process standard applicable in the post-conviction context. *Id.* at 70-71.

Here, the version of the Colorado DNA testing statute in effect at the time of Hunter's unsuccessful state court request to have the DNA found at his crime scene retested is notably similar to the statutory regime at issue in *Osborne*. In the version of section 18-1-413 in effect in 2022 (at the time of Hunter's state court petition), the statute provided: "[a] court shall not order DNA testing unless the petitioner demonstrates by a preponderance of the evidence that: (a) [f]avorable results of the DNA testing will *demonstrate the petitioner's actual innocence*...." *Id.* at (1)(a) (emphasis added). In other words, to be eligible for DNA testing, a

petitioner needed to show – by a preponderance of the evidence – that a favorable test result would show that he or she was actually innocent of the crime in question. *Id.* The significant similarities between the Alaska statutory framework endorsed by the Supreme Court in *Osborne*, which required a petitioner to be released on a sufficiently compelling showing of new evidence establishing innocence, and the pre-amendment Colorado regime, which requires DNA to be tested when the petitioner establishes by a preponderance of the evidence that a favorable result would demonstrate "actual innocence," is plainly apparent.

And indeed, as noted in DA King's Answer Brief, this issue is not a novel one for this Court. In 2009, the Tenth Circuit considered a *pro se* lawsuit asserting that the then-Colorado Attorney General and then-Jefferson County District Attorney violated an inmate's due process rights by adhering to the terms of the DNA testing statute then in effect (as interpreted and applied by the Colorado courts in that particular case) and refusing to grant his request for post-conviction testing. *See McDaniel*, 335 F. App'x at 736. In a relatively terse opinion, the Tenth Circuit rejected this argument, and it held that pursuant to *Osborne*, Colorado is afforded "flexibility in deciding what procedures are needed in the context of postconviction relief," and there was "nothing inadequate about the procedures [Colorado] has provided to vindicate its state right to postconviction relief in general, and nothing inadequate about how those procedures apply to

those who seek access to DNA evidence." *Id.* (quoting *Osborne*) (internal quotations omitted). Accordingly, the *McDaniel* court held that *Osborne* was dispositive, and it rejected the inmate's appeal that the DNA testing statute was unconstitutional.

The same conclusion is warranted in this case, and to the extent that Hunter argues that the pre-amendment version of the Colorado DNA testing statute violated his Fourteenth Amendment due process rights, *Osborne* and *McDaniel* firmly undercut that contention. To be sure, the statute was amended in 2023 and, as currently formulated, it apparently provides a relatively less stringent standard for inmates seeking post-conviction DNA testing.[4] But that is irrelevant. The due process right to post-conviction relief in the face of new evidence – including DNA testing established by *Osborne* – is a constitutional "floor," and states are free to pass laws that provide more expansive due process rights if they wish. It does not change what the minimum federal constitutional standard is, and as recognized by

---

[4] Specifically, as currently formulated, section 18-1-413, COLO. REV. STAT., provides that a court should order DNA testing if "[i]t finds a reasonable probability that the petitioner would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution." *Id.* at (1)(a). In other words, "reasonable probability" has replaced "preponderance of the evidence" in the prior version, and "would not have been convicted" replaces "actual innocence." It is not entirely clear what effect this change will have, but Director Schaefer concedes for the purposes of the instant appeal only, that it appears the threshold for a Colorado court to order post-conviction DNA testing was intended to be a somewhat lower one as the result of the amendment.

the Tenth Circuit, the pre-amendment version of section 18-1-413, COLO. REV. STAT., clearly met it.

Therefore, insofar as Hunter argues that his 2022 state court petition was denied based on an unconstitutional standard imposed by the pre-amendment version of the Colorado DNA testing statute in effect at that time, again, he failed to preserve that issue for review by this Court. But even if he had not, his argument must be rejected. The pre-amendment version was clearly constitutional based on the test set forth by the Supreme Court in *Osborne*, as expressly recognized by this Court in *McDaniel*.

## V.    THERE ARE NO ALLEGATIONS THAT ANY ALLEGED MIDCONDUCT BY WOODS IS RELEVANT TO HUNTER'S CONVICTION.

Throughout Hunter's Opening Brief, he references the "scandal" involving Woods (Op. Br. at 13), which he characterizes as "the State's key forensic scientistic expert" being allowed "to frame numerous citizens" and commit "systemic fraud." (Op. Br. at 28.) Hunter no doubt refers to a recent, highly-publicized series of stories involving Woods and alleged widespread improprieties in the CBI DNA testing lab, which ultimately resulted in a formal investigation by CBI.[5] In his Opening Brief, Hunter seems to imply that this controversy or scandal

---

[5] See, e.g., CBI webpage titled *Yvonne "Missy" Woods Investigation*, available at https://cbi.colorado.gov/sections/administration/media-relations/yvonne-missy-woods-investigation. The CBI webpage includes links to outside stories.

alone should be enough to cast doubt on his prior conviction, and he further argues that it constitutes exculpatory evidence that warrants disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

There are a number of problems with this line of argument. First, as noted in DA King's Opening Brief, Hunter did not raise this argument in the District Court, and thus he failed to preserve it. This Court should not entertain it for that reason alone.

Second, as for the contention that Director Shaefer or CBI or any other state actor had a *Brady* obligation to disclose any purported misconduct involving Woods as potentially exculpatory evidence, that must be rejected out of hand. As noted in footnote 2, *supra*, *Osborne* unequivocally rejects the proposition that *Brady*'s requirement that prosecutors disclose such evidence applies in the post-conviction context. *See* 557 U.S. at 69. As the Supreme Court expressly held, "[a convicted individual's] right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been found guilty at a fair trial, and has only a limited interest in postconviction relief. *Brady* is the wrong framework." *Id.* So even if Woods' purported misconduct that is the focus of the current controversy (and the CBI investigation) could be seen as exculpatory in

some way, there is no *Brady* obligation to disclose it to a convicted individual like Hunter.[6]

And third, and perhaps most importantly, Hunter's ominous allusions in his Opening Brief to the current scandal and investigation involving Woods must be ignored because *that controversy has nothing to do with the allegations involving Woods in his Complaint*.  Namely, while the current imbroglio involving Woods focuses on her work conducting DNA testing, Hunter's Complaint does not contend in any way that his conviction was based on any faulty DNA testing originating from Woods or the CBI blood testing apparatus.  Instead, he seems to fault Woods solely for an incorrect analysis performed on a hair sample recovered at the crime scene – but this mistake was one that was both identified at the time, and one that is unrelated to any DNA-related misconduct on the part of Woods. (App. 20-24.)  Moreover, although Hunter does now assert a DNA-based claim, it is not that an inaccurate DNA test led to his conviction; instead, his current claim is that a blood sample that was inclusive based on the DNA testing technology available at the time of his conviction might be retested using more advanced modern-day technology, and that the result could exonerate him.  (*Id.* at 25-26.)

---

[6] That said, under Rule 3.8 of the Colorado Rule of Professional Conduct and various other similar ethical standards, a Colorado prosecutor likely would have an obligation to disclose certain new evidence discovered after conviction that suggests innocence, at least in many scenarios.

But Woods' alleged misconduct that is the focus of the current scandal and investigation involving her has no bearing on that theory.

Therefore, Hunter's characterization of Woods and the CBI laboratory generally in his Opening Brief must be seen for what it is – an attempt to smear CBI and Director Schaefer for a specific sort of highly publicized potential misconduct by a former CBI employee, which is a serious matter that is being treated accordingly, but which also had *absolutely nothing* to do with the circumstances leading to his 2002 conviction. This Court should ignore Hunter's inflammatory rhetoric on this issue accordingly.

## CONCLUSION

For all the reasons stated above, this Court should affirm the District Court's decision dismissing Director Schaefer from this action.

Respectfully submitted this 10th day of December, 2024.

PHILIP J. WEISER
Attorney General

*s/ Joshua G. Urquhart*

JOSHUA G. URQUHART* 38863
Senior Assistant Attorney General
Civil Litigation & Employment Section
1300 Broadway, 10th Floor
Denver, CO  80203
Telephone: (720) 508-6569
FAX: (720) 508-6032
Email: josh.urquhart@coag.gov

*Counsel of Record
*Attorney for Chris Schaefer, Director of the
Colorado Bureau of Investigation*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f):

> [X] this brief contains **4,088** words, **or,**
> [ ] this brief uses a monospaced typeface and contains [state the number of] lines of text.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [ X ] this brief has been prepared in a proportionally spaced typeface using Windows Word in Times New Roman, Type Size 14, **or**
> [ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Date: December 10, 2024.

*s/ Josh G. Urquhart*
Josh G. Urquhart
Attorney for Appellee Chris Schaefer

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of December, 2024, I filed and served a

true and correct copy of **APPELLEE CHRIS SCHAEFER'S ANSWER BRIEF**

via the Court's CM/ECF system, which will cause notice of such filing to be sent

to all counsel of record.

_s/Jennifer Kaercher_
Jennifer Kaercher, Senior Paralegal
Office of the Colorado Attorney General