UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

JAMES HUNTER

      Plaintiff – Appellant,

v.

ALEXIS KING

CHRIS SCHAFFER

CHIEF SMITH

YVONNE M. WOODS

      Defendants – Appellees.

Case No. 24-1210

---

On Appeal from the United States District Court For the District of Colorado
The Honorable Judge Daniel D. Domenico
Civil Action No. 1:23-cv-02989-DDD-MEH
Oral argument is not requested.

---

**APPELLEE YVONNE M. WOODS'S ANSWER BRIEF**

---

Respectfully submitted,

Scott A. Neckers
Steven W. Boatright
Sarah A. Thomas
OVERTURF MCGATH & HULL, P.C.
625 East Sixteenth Avenue, Suite 100
Denver, Colorado 80203
Tel: (303)860-2848
san@omhlaw.com, swb@omhlaw.com,
sat@omhlaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................v

PRIOR OR RELATED APPEALS ...........................................................1

10th CIR. R. 31.3(B) CERTIFICATE OF COUNSEL................................1

STATEMENT OF THE ISSUES................................................................1

STATEMENT OF THE CASE...................................................................2

SUMMARY OF THE ARGUMENT .........................................................5

ARGUMENT ..............................................................................................6

I.   THE DISTRICT COURT DID NOT ERR AS A MATTER OF LAW IN DISMISSING MR. HUNTER'S AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER THE *ROOKER-FELDMAN* DOCTRINE ...............................................................................6

   A.  Standard of Review...........................................................6

   B.  The District Court Correctly Concluded that Mr. Hunter's Claim Against Ms. Woods was Barred Under the *Rooker-Feldman* Doctrine..............................7

II.   IN THE ALTERNATIVE, THIS COURT SHOULD AFFIRM ON THE GROUNDS THAT MS. WOODS RAISED IN THE DISTRICT COURT REGARDING MR. HUNTER'S FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED................................................10

   A.  Standard of Review.........................................................10

   1.  This Court May Affirm on Alternative Grounds Supported by the Record .10

   B.  Ms. Woods is Not a Proper Party for Mr. Hunter's Requested Relief Because Ms. Woods Does Not Have Custody or Control Over the Evidence Mr. Hunter is Seeking...........................................................12

C.    Mr. Hunter Failed to Plausibly Allege Conspiratorial Conduct by Ms. Woods in his Amended Complaint......................................................................14

D.    Mr. Hunter Failed to Plausibly Allege a Procedural Due Process Violation Against Ms. Wood ..........................................................................................15

    1.    Plaintiff Did Not Allege Personal Participation by Defendant Woods in the Alleged Post-Conviction Deprivation of His Due Process Rights ....................16

    2.    Mr. Hunter Did Not Allege Deprivation of a Protected Liberty Interest in Post-Conviction DNA Testing or State Clemency .............................................17

III.    THE OTHER ISSUES RAISED IN MR. HUNTER'S OPENING BRIEF WERE NOT PRESERVED, AND IF THEY WERE, THEY ARE WITHOU MERIT ....................................................................................................................24

  A.    Standard of Review...............................................................................................24

  B.    Mr. Hunter Did Not Preserve His Arguments Regarding the Unconstitutionality of the Post-Conviction DNA Statute Prior to 2023 and, Even if He Had, His Arguments Lack Merit ..................................................................25

  C.    Mr. Hunter Did Not Preserve His Arguments Regarding the Constitutionality of Colorado's State Clemency Statute......................................27

  D.    Mr. Hunter Did Not Preserve His Arguments Regarding Alleged *Brady* Violations...............................................................................................................29

  E.    Mr. Hunter Did Not Preserve His Arguments Regarding Federal Habeas Corpus Relief, or his Alleged Gateway and Actual Innocence Claims and, Even if He Had, His Arguments Lack Merit ..................................................................29

  F.    Bad Faith Prosecution.........................................................................................31

CONCLUSION ..................................................................................................................32

CERTIFICATE OF SERVICE ...................................................................................33

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT..................34

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. 12, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).............................. 13, 14

*Bennett v. Spear*, 520 U.S. 154, 166-67 (1997) ........................................................11

*Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011).....................................18

*Camuglia v. The City of Albuquerque*, 448 F.3d 1214 (10th Cir. 2006) ................25

*Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458 (1981) ..................... 32, 33

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)..........................................4

*D'Amario v. Davis*, 2010 WL 537807 (D. Colo. Feb. 12, 2010)............................22

*Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (U.S. 2009)

.................................................................................................................... passim

*Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co.*, 497 F.3d 1135 (10th Cir.

2007) ....................................................................................................................29

*Elwell v. Byers*, 699 F.3d 1208 (10th Cir. 2012) ....................................................11

*Fed. Lands Legal Consort. ex rel. Robart Estate v. United States*, 195 F.3d 1190

(10th Cir. 1999)....................................................................................................12

*Foote v. Spiegel*, 118 F.3d 1416 (10th Cir.1997) ....................................................18

*Frederiksen v. City of Lockport*, 384 F.3d 437 (7th Cir. 2004)................................6

*Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010) ....................................................16

*Hansen v. Harper Excavating, Inc*., 641 F.3d 1216 (10th Cir. 2011) ......................2

*Holt v. United States*, 46 F.3d 1000 (10th Cir. 1995)................................................7

*House v. Bell*, 547 U.S. 518 (2006) ........................................................................36

*Mathews v. Eldridge*, 424 U.S. 319, 332, (U.S. 1976) .................................... 18, 25

*McDaniel v. John Suthers*, 2008 WL 4527697 (D. Colo. Oct. 2, 2008) .................23

*McDaniel v. Suthers*, 335 Fed. Appx. 734 (10th Cir. 2009)........................... passim

*McQuiggin v. Perkins*, 569 U.S. 383 (2013) .................................................... 35, 36

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072 (10th Cir. 2004).......8

*Miller v. Deutsche Bank Nat. Trust Co*. *(In re Miller)*, 666 F.3d 1255 (10th Cir.

   2012) .....................................................................................................................6

*Mobley v. McCormick*, 40 F.3d 337 (10th Cir. 1994)..............................................12

*Mo's Express, LLC v. Sopkin*, 441 F.3d 1229 (10th Cir. 2006) ................................6

*Pennsylvania v. Finley*, 481 U.S. 551 (U.S. 1987)..................................................25

*People v. Hunter*, 20CA0993 (Colo. App. Jan 27, 2022) (unpublished) ..............2, 3

*Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186 (10th Cir. 2008) ...........7

*Reed v. Goertz*, 598 U.S. 230 (2023) ..................................................................8, 18

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).....................................................3

*Rumsfeld v. Padilla,* 542 U.S. 426 (2004) ....................................................... 34, 35

*S. Disposal, Inc., v. Tex. Waste Mgmt*., 161 F.3d 1259 (10th Cir. 1998) ...............13

*Safe Streets All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) ..........................11

*Schlup v. Delo*, 513 U.S. 298 (1995) ................................................................. 35, 36

*Seibert v. Okla. ex rel. Univ. of Okla. Health Sci. Ctr.*, 867 F.2d 591 (10th Cir.

    1989) ..................................................................................................................11

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007).7, 32

*Skinner v. Switzer*, 562 U.S. 521 (2011) ...................................................... 8, 20, 21

*Snell v. Tunnell*, 920 F.2d 673 (10th Cir. 1990) .............................................. 16, 17

*Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund,* 343 F.3d 1311,

    1321-22 (10th Cir. 2003) ...................................................................................12

*Teigen v. Renfrow*, 511 F.3d 1072 (10th Cir. 2007) ...............................................19

*Tele–Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229 (10th Cir.1997)..........................29

*Thayer v. McDonald,* 781 P.2d 190 (1989) ...................................................... 35, 36

*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1994).....................16

*Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005)........................................20

*U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd*., 582 F.3d 1131 (10th

    Cir. 2009) ..........................................................................................................29

*West v. Atkins*, 487 U.S. 42, 48(1988) ...................................................................16

*Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990) .......................................... 24, 27

**Statutes**

42 U.S.C. § 1983 ..................................................................................... 3, 9, 16, 17

C.R.S. § 13-1-412(2021).........................................................................................27

C.R.S. § 18-1-411 et seq ................................................................. 21, 27

C.R.S. § 18-1-413 ...............................................................................3, 24

C.R.S. §§ 18-1-411 to 416 .....................................................................26

Colo. Rev. St. § 16-17-101 .....................................................................33

Colo. Rev. Stat. § 18-1-411 .....................................................................30

Colo. Rev. Stat. § 18-1-416 .....................................................................28

Colo. Rev. Stat. §§ 18-1-411 to -417 .......................................................9

## Other Authorities

HB 23-1034 .............................................................................................25

## Rules

10th Cir. R. 31.3(D) ...............................................................................31

Fed. R. Civ. P. 12(b)(1) ...........................................................................6

Fed. R. Civ. P. 12(b)(6) .........................................................................10

Fed. R. Evid. 201 ....................................................................................2

Defendant-Appellee Yvonne M. Woods ("Ms. Woods"), by and through her attorneys, Overturf McGath & Hull, P.C., respectfully submits her Answer Brief and states as follows:

## PRIOR OR RELATED APPEALS

There are no prior or related appeals in federal court regarding the claims at issue in this case.

## 10th CIR. R. 31.3(B) CERTIFICATE OF COUNSEL

Pursuant to 10th Cir. R. 31.3(D), Ms. Woods asserts that all appellees in this matter are government employees/entities or were government employees/entities at the time Plaintiff filed his complaint and when the events associated with his cause of action occurred. All appellees were sued in the district court in their capacities as government employees. Therefore, separate briefs are appropriate, and Ms. Woods elects to file a separate brief.

## STATEMENT OF THE ISSUES

(1)     Whether the district court correctly dismissed Appellant James Hunter's ("Mr. Hunter") claim against Ms. Woods by finding that it lacked subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

(2)     Whether the district court's order of dismissal and final judgment should be affirmed on any of the following alternative grounds:

(a) Ms. Woods is not a proper party for the requested relief.

(b) Mr. Hunter failed to allege facts showing a conspiracy.

(c) Mr. Hunter failed to allege facts showing a due process violation.

(3)    Whether Mr. Hunter preserved the other arguments in his Opening

Brief, and if so, whether they warrant reversal of the district court's decision.

## STATEMENT OF THE CASE

This matter arises out of Appellant James Hunter's ("Mr. Hunter") 2004 conviction in Colorado state court, case number 02CR3254, on second-degree burglary and sexual assault charges. (App. 20, ¶¶ 12–13. *See also* Jefferson County Court Case 2002CR3254 Docket Report, App. 59 –61.)[1] In that case, the prosecution introduced DNA evidence linking Mr. Hunter to the crime. *People v. Hunter*, 20CA0993 (Colo. App. Jan 27, 2022) (unpublished) (App. 62–76, ¶ 3.) The prosecution also introduced other supporting evidence including but not limited to

---

[1] Defendant Woods requests that the Court take judicial notice of the docket report in Jefferson County District Court Case 2002CR3254 App. 59 –61, ECF 43-1) and the Colorado Court of Appeals' January 27, 2022 Opinion affirming the state trial court's denial of Plaintiff's petition for new DNA testing (App. 62–76, ECF 43-2). The Colorado Court of Appeals' Opinion summarizes Mr. Hunter's state criminal proceedings, which include Court of Appeals Cases 2004CA699, 2008CA316, 2017CA2112, and 2020CA993, and Colorado Supreme Court Cases 2010SC146, 2019SC411, and 2022SC220 (denying certiorari on Case 2020CA993). Per Fed. R. Evid. 201, a court "may take judicial notice of undisputed court documents and matters of public record as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Hansen v. Harper Excavating, Inc*., 641 F.3d 1216, 1219, n.2 (10th Cir. 2011) (citation omitted) (under Fed. R. Evid. 201, judicial notice may be taken "at any stage of the proceeding").

Mr. Hunter's admission that he was in the area on the night of the crime, his body size and features matching the adult victim's description of the perpetrator, evidence that the clothes he was wearing on the night of the crime matched the description of the perpetrator's clothes, and the adult victim's testimony that she recognized his voice from prior conversations with him. (*Id.*)

Since his conviction, Mr. Hunter has sought multiple forms of post-judgment relief, including filing a petition for new DNA testing pursuant to C.R.S. § 18-1-413, which the trial court denied. (*See* App. 59–61.) The Colorado Court of Appeals affirmed the trial court's denial of Mr. Hunter's request on January 27, 2022 and the Colorado Supreme Court declined to review that decision in May of 2022. (App. 62–76; App. 27, ¶ 39.)

Mr. Hunter then filed a 42 U.S.C. § 1983 action alleging that Alexis King, Chris Schaffer, Chief Smith, and Yvonne M. Woods (together "Appellees") violated his due process rights by withholding DNA evidence he sought to have retested through his earlier petition. (App. 14–35.) Plaintiff sought both declaratory relief, finding that Appellees violated his due process rights by denying him access to DNA evidence, and injunctive relief, requiring Appellees to provide him access to certain evidence for DNA testing. (*Id.*)

Ms. Woods filed a Motion to Dismiss, seeking dismissal on the following grounds: (1) Mr. Hunter's claims are barred under the *Rooker Feldman* doctrine[2] because they seek impermissible review of a state court judgment by the federal court; (2) Mr. Hunter failed to state a plausible claim for conspiracy; and (3) Mr. Hunter failed to state a plausible claim for due process violations because (a) he failed to request relief that can be granted against Ms. Woods given that she no longer works for the State of Colorado, (b) he did not allege personal involvement in the alleged deprivation of due process, (c) there is no protected liberty interest in accessing DNA post-conviction, and (d) Mr. Hunter had adequate state process in previously seeking the requested relief. (App. 80–91.) The other Appellees moved to dismiss on similar grounds. (App. 37–44, 45–58, 132–144.)

Appellees' motions to dismiss were referred to Chief Magistrate Judge Hegarty. Following a hearing before the Chief Magistrate Judge, but before the Chief Magistrate Judge issued a Report and Recommendation, the district court withdrew the referral. (App. 10–12, ECF 49, 70, 71 (minute order entries).) Following oral argument and review of the parties' briefing, the District of Colorado held that it lacked subject matter jurisdiction to decide Mr. Hunter's claim because the *Rooker-*

---

[2] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

*Feldman* doctrine barred its review of state court judgment. (App. 183–184.) This appeal followed.

## SUMMARY OF THE ARGUMENT

Mr. Hunter appeals the district court's dismissal of the due process claim against Ms. Woods in which he alleged that Ms. Woods, among others, conspired with the other Appellees and other unnamed individuals to prevent Mr. Hunter from conducting DNA testing and to conceal information regarding identification evidence in connection with Mr. Hunter's 2004 conviction.

The district court correctly dismissed Mr. Hunter's due process claim on the grounds that it lacked jurisdiction over this claim pursuant to the *Rooker-Feldman* doctrine. The district court found that Mr. Hunter's requested relief amounted to federal review of a state court judgment after Mr. Hunter had already lost in state court. The district court further found that Mr. Hunter's claimed injuries were caused by that state court judgment and that the state court judgment was final when Mr. Hunter filed his federal case. Now on appeal, Mr. Hunter has failed to challenge the district court's analysis and instead introduces new issues that he did not raise in the district court. These new issues should not be considered in affirming the district court's dismissal of Mr. Hunter's claims. Further, there are alternative grounds on which this Court may affirm the district court's dismissal of Mr. Hunter's claim against Ms. Woods. First, Ms. Woods is not a proper party for the requested relief.

Second, Mr. Hunter failed to allege facts sufficient to state a plausible claim for conspiracy against Ms. Woods. Third, Mr. Hunter failed to allege facts sufficient to state a plausible claim for a due process violation against Ms. Woods.

For the reasons discussed herein, this Court should affirm the district court's dismissal of Mr. Hunter's claim against Ms. Woods.

## ARGUMENT

I.    **THE DISTRICT COURT DID NOT ERR AS A MATTER OF LAW IN DISMISSING MR. HUNTER'S AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION UNDER THE *ROOKER-FELDMAN* DOCTRINE**

### A. Standard of Review

The Court reviews the district court's dismissal for lack of subject matter jurisdiction de novo, and any factual findings relevant to the court's jurisdiction for clear error. *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006)). This standard includes review of the application of the *Rooker-Feldman* doctrine. *Miller v. Deutsche Bank Nat. Trust Co. (In re Miller)*, 666 F.3d 1255, 1260 (10th Cir. 2012). *See also Frederiksen v. City of Lockport*, 384 F.3d 437, 439 (7th Cir. 2004) ("We now hold that the right disposition, when the *Rooker-Feldman* doctrine applies, is an order under Fed. R. Civ. P. 12(b)(1) dismissing the suit for lack of subject-matter jurisdiction.").

Fed. R. Civ. P. 12(b)(1) governs dismissal for lack of subject matter jurisdiction. The party asserting jurisdiction bears the burden of establishing subject

matter jurisdiction. *See Port City Properties v. Union Pac. R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). A "federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the cause (subject-matter jurisdiction) . . . ." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423, (2007). Motions to dismiss for lack of subject matter jurisdiction may take two forms: (1) making a "facial attack" on the sufficiency of the "allegation as to subject matter jurisdiction" in the complaint or (2) "go[ing] beyond allegations contained in the complaint and challeng[ing] the facts upon which subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002–3 (10th Cir. 1995). In reviewing a facial attack, the court takes the allegations in the complaint as true. *Id.* at 1003.

### B. The District Court Correctly Concluded that Mr. Hunter's Claim Against Ms. Woods was Barred Under the *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074-75 (10th Cir. 2004). Under this doctrine, federal courts are barred from deciding cases brought by the state court losing parties challenging state court judgments. *Reed v. Goertz*, 598 U.S. 230, 235 (2023). In other words, the losing party in state court may not file a U.S. District Court case after state proceedings end

to complain of an injury caused by the state court decision and to seek rejection of the state court judgment. *Skinner v. Switzer*, 562 U.S. 521, 531 (2011). While a "'state-court decision is not reviewable by lower federal courts,' a 'statute or rule governing the decision may be challenged in a federal action.'" *Reed*, 598 U.S. at 235 (citing *Skinner*, 562 U.S. at 532).

Before filing this action, Mr. Hunter asked a state court to allow new testing of DNA evidence from his criminal trial pursuant to Colorado's post-conviction DNA testing statute, Colo. Rev. Stat. §§ 18-1-411 to -417. (App. 66, ¶ 10.) Specifically, Mr. Hunter alleged that additional DNA testing would prove his "actual and factual innocence." (*See, e.g,* App. 14–15, ¶¶ 1–3.) A Colorado trial court denied Mr. Hunter's petition, and the Colorado Court of Appeals upheld the trial court's denial, noting that Mr. Hunter failed to meet the statutory criteria that would permit him to retest DNA evidence from his criminal trial, including failing to show that a favorable DNA test result would result in a showing of actual innocence. (*Id.* at ¶¶ 28-30. *See also* App. 75.) Now, Mr. Hunter seeks the same relief from this Court as he sought in the state courts by challenging the state court's determination that he is not entitled to postconviction DNA testing.[3]

---

[3] In his Opening Brief, Mr. Hunter asserts that he also sought "CBI reports that were exculpatory" through his Section 1983 claim (Aplt. Br. p. 4.) However, this request did not appear anywhere in his Amended Complaint. (*See* App. 14-36.) Accordingly, this Answer Brief only discusses the DNA evidence itself.

The district court correctly determined that Mr. Hunter's 42 U.S.C. § 1983 claim did not constitute a facial attack on the constitutionality of Colorado's post-conviction DNA statute, but rather, challenged the state courts' application of the statute. Mr. Hunter's single superficial allegation regarding the constitutionality of the post-conviction DNA testing statute was insufficient to post a facial challenge to the statute. As the district court noted, Mr. Hunter's allegation that "the Colorado post-conviction DNA statute is unconstitutional as construed by the Colorado courts" (App. 26, ¶ 32) amounted to a "threadbare assertion of a Constitutional cause of action" that was "insufficient to overcome a motion to dismiss." (App. 180.)

Moreover, Mr. Hunter's allegation amounted to a challenge to the state court's <u>application</u> of the statute, particularly the requirement that a petitioner meet the statutory elements to receive the requested relief, not a challenge to the constitutionality of the statute itself. (*See* App. 181.) The district court noted as follows:

> While I take no stance here on the merit of Plaintiff's claims about the reliability of the evidence that was used to support his underlying conviction, I do note that the entire gist of the complaint is to suggest that the Colorado Court of Appeals made an incorrect determination when it found that a favorable DNA test result would not have been enough to make a showing of actual innocence. By impugning the other evidence used against him at trial, Plaintiff clearly intends to establish the inference that a favorable DNA test result would show he is an innocent man. These facts, combined with Plaintiff's request for injunctive relief requiring the Defendants to conduct the same DNA testing he sought in his state court suit, suggest to me that Plaintiff essentially wants to relitigate an issue that was already decided in state court, and that I am therefore barred from assuming jurisdiction under the Rooker-

Feldman doctrine.

(App. 180.) Because Mr. Hunter has already sought relief in Colorado state courts and his only allegation is that the Colorado courts incorrectly applied the statute, his request for relief is a direct challenge to the state court rulings. This is the exact type of relief that is prohibited under the *Rooker-Feldman* doctrine. Thus, this Court should affirm the district court's finding that it lacked subject matter jurisdiction over Mr. Hunter's claims and affirm that dismissal was required.

## II.    IN THE ALTERNATIVE, THIS COURT SHOULD AFFIRM ON THE GROUNDS THAT MS. WOODS RAISED IN THE DISTRICT COURT REGARDING MR. HUNTER'S FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Standard of Review

#### 1.   This Court May Affirm on Alternative Grounds Supported by the Record

The trial court did not reach the merits when it ruled on Appellees' Motions to Dismiss, finding that it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. (App. 184.) However, this Court has discretion to affirm the district court's dismissal on any grounds adequately supported by the record. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 879 (10th Cir. 2017) (quoting *Elwell v. Byers*, 699 F.3d 1208, 1213 (10th Cir. 2012)). In exercising that discretion, an appellate court considers whether the ground was fully briefed and argued on appeal and below, *see Bennett v. Spear*, 520 U.S. 154, 166–67 (1997); whether the parties

have had a "fair opportunity to develop the [factual] record," *Seibert v. Okla. ex rel. Univ. of Okla. Health Sci. Ctr.*, 867 F.2d 591, 597 (10th Cir. 1989), abrogated on other grounds by *Fed. Lands Legal Consort. ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1195–96 (10th Cir. 1999), and whether the appellate court's decision would involve only questions of law or depend on disputed facts, *see Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund,* 343 F.3d 1311, 1321–22 (10th Cir. 2003).

### 2. Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)

When considering a motion filed under Fed. R. Civ. P. 12(b)(6), a court's function is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). First, a court must accept as true allegations that are not legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not warrant the presumption of truth. *Id*. at 678. Second, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 679. Plausibility means that the plaintiff pled facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The Court, however, need not accept conclusory allegations

without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998).

A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will it do if it "tenders 'naked assertion[s]' devoid of 'further actual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Thus, conclusory allegations are "not entitled to the assumption of truth" and are not considered. *Id*. at 679. Instead, a court looks to whether the complaint includes "enough factual matter (taken as true) to suggest" that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 556.

## B. Ms. Woods is Not a Proper Party for Mr. Hunter's Requested Relief Because Ms. Woods Does Not Have Custody or Control Over the Evidence Mr. Hunter is Seeking

As a threshold matter, Mr. Hunter cannot receive the declaratory or injunctive relief he is seeking from Ms. Woods even if he prevails on his sole cause of action. Plaintiff states that he has brought this due process claim against "four key individuals that have control and/or custody of exculpatory DNA and forensic evidence . . . ." (Aplt. Br. p. 2.) Mr. Hunter is requesting two forms of relief from Appellees: (1) a declaratory judgment stating that Ms. Woods, and the other Appellees, violated his due process rights with respect to Mr. Hunter's desire to prove his innocence and/or establish a basis for post-conviction relief; and (2) an

injunction requiring Ms. Woods, and the other Appellees, to provide Mr. Hunter with access to the print and biological evidence in her control. (App. 34–35, ¶ 64.) Mr. Hunter is not seeking monetary damages related to his due process claim.

Despite Mr. Hunter's vague allegations about the Appellees' control over the specified evidence, including the allegation that the "[e]vidence collected in this case is in the possession of the [Appellees] and their respective agencies . . . ." (App. 30, ¶ 51), there is no basis to request such relief with respect to Ms. Woods. The only time Mr. Hunter makes a specific allegation against Ms. Woods regarding custody of the DNA evidence is when he states that "[u]pon information, Ms. Woods . . . may have custody and control of material evidence that may be tested for DNA." (App. 18–19, ¶ 9.) However, Ms. Woods is no longer a Colorado Bureau of Investigation ("CBI") employee and is not performing forensic testing,[4] a fact that Mr. Hunter acknowledges in his Amended Complaint. (App. 33, ¶ 61.) Ms. Woods cannot be compelled to allow access to materials that are not in her custody or control. Additionally, the decision not to permit additional DNA testing was made by the state courts, not Ms. Woods. Any declaratory relief stating otherwise would be improper. Therefore, Mr. Hunter cannot state a claim upon which relief can be granted against Ms. Woods.

---

[4] Ms. Woods disputes Mr. Hunter's assertions in the Amended Complaint (App. 61) and his Opening Brief (Aplt. Br. p. 28) that she was fired from her position with the CBI and is unaware of Mr. Hunter's factual basis for claiming as such.

### C. Mr. Hunter Failed to Plausibly Allege Conspiratorial Conduct by Ms. Woods in his Amended Complaint

This Court should affirm the district court's dismissal of Mr. Hunter's Amended Complaint by finding that Mr. Hunter failed to state a claim for relief under 42 U.S.C. § 1983 for conspiracy against Ms. Woods. A plaintiff states a claim under Section 1983 when they plausibly plead that there was a "violation of a right secured by the Constitution and laws of the United States," and "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

To succeed on a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show the following: "(1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights." *Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir. 1990). Conclusory and speculative allegations of conspiracy are insufficient to state a valid Section 1983 claim. *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1994). Instead, a plaintiff must "allege specific facts showing agreement and concerted action among defendants." *Id.* "[A]n allegation of parallel conduct absent context implying a meeting of the minds" is, by itself, insufficient to withstand a motion to dismiss." *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010).

Although he frames his claim as a due process violation, the gist of the Amended Complaint is to suggest that Ms. Woods conspired with the other Appellees and others to deprive Mr. Hunter of access to post-conviction DNA testing. Mr. Hunter made several vague allegations of "conspirator conduct" by the Appellees with his only direct allegation against Ms. Woods being that she conspired with local law enforcement to prevent testing of biological evidence that could substantiate Plaintiff's innocence. (App. 18, ¶ 9). However, Mr. Hunter did not specifically allege any agreement between Ms. Woods and any Appellee or specify what conduct constitutes concerted action in furtherance of this agreement by Ms. Woods, both of which are required to prove a conspiracy claim. *See Snell*, 920 F.2d at 702. Mr. Hunter's failure to show any involvement by Ms. Woods in a shared conspiratorial objective, concerted action, or an actual deprivation of rights shows that a plausible conspiracy claim cannot exist. Accordingly, Mr. Hunter failed to state a plausible claim for relief under a conspiracy theory and the Court may affirm on these alternative grounds

### D. Mr. Hunter Failed to Plausibly Allege a Procedural Due Process Violation Against Ms. Wood

This Court should affirm the district court's dismissal of Mr. Hunter's Amended Complaint by finding that he failed to state a claim for relief under 42 U.S.C. § 1983 against Ms. Woods for a procedural due process violation.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the…Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, (U.S. 1976) (quotations omitted).[5] To show a due process violation, a plaintiff must allege facts showing (1) "deprivation by state action of a protected interest in life, liberty, or property," and (2) "inadequate state process." *Reed*, 598 U.S. at 236 (citation omitted).

### 1. Plaintiff Did Not Allege Personal Participation by Defendant Woods in the Alleged Post-Conviction Deprivation of His Due Process Rights

A person sued in an individual capacity may be subject to personal liability. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997)). Personal liability under Section 1983 "must be based on personal involvement in the alleged constitutional violation." *Id*. (emphasis added).

---

[5] Plaintiff does not clarify whether he is alleging both procedural and substantive due process. However, the Supreme Court has declined to extend the concept of substantive due process to recognize a freestanding right to DNA evidence. *See Osborne*, 557 U.S. at 72 (U.S. 2009) ("Osborne seeks access to state evidence so that he can apply new DNA-testing technology that might prove him innocent. There is no long history of such a right, and [t]he mere novelty of such a claim is reason enough to doubt that substantive due process sustains it." (internal quotations removed)). As such, this Brief only addresses procedural due process.

Here, Mr. Hunter alleges that Appellees have denied him access to certain evidence from the underlying criminal investigation and prosecution, which he seeks to be able to conduct additional post-conviction testing. (*See* App. 29, ¶ 49.) However, as noted above, Ms. Woods was not the custodian of this evidence, nor could she possibly access such evidence going forward given that she no longer works for the CBI. (App. 33, ¶ 61.) Further, Plaintiff previously sought access to this evidence through the state courts by filing a petition requesting additional testing. (App. 66, ¶¶ 10–11.) Plaintiff's Amended Complaint does not allege in any way that during this process and after the denial of his State Court petition, Ms. Woods played any role in depriving Plaintiff of access to any evidence.

### 2. Mr. Hunter Did Not Allege Deprivation of a Protected Liberty Interest in Post-Conviction DNA Testing or State Clemency

To meet the first prong of a due process claim, a plaintiff must demonstrate the existence and deprivation of a protected property interest for which the plaintiff is constitutionally entitled to an appropriate level of process. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). While the underlying interest is generally created by state law, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (quotation omitted).

In his Amended Complaint, Mr. Hunter alleges that he "has a liberty interest in utilizing state procedures to obtain reversal of his conviction and/or to obtain a pardon or reduction of sentence in clemency proceedings with the Governor of Colorado . . ." by way of retesting certain DNA evidence from his 2002 criminal trial. (App. 29 at ¶ 47.)

The Supreme Court has limited "the federal action a state prisoner may bring for DNA testing." *Skinner*, 562 U.S. at 525. The Supreme Court also limited a prisoner's ability "to show that the governing state law denies him procedural due process." *Id*. (citing *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52 (U.S.2009) (internal citations omitted)).

In *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, the Supreme Court held that the defendant had a limited liberty interest in demonstrating his innocence with new evidence as provided for under Alaska state law but declined to recognize a freestanding right to DNA testing. *Osborne*, 557 U.S. at 67–68. There, the plaintiff alleged a due process right to access the evidence used against him in order to subject it to DNA testing. *Id*. The plaintiff relied on a state law that allowed a prisoner to use newly discovered evidence to establish their innocence and obtain vacation of their sentence. *Id.* However, the Court limited a convicted person's right to postconviction DNA testing to the confines of the applicable state laws governing this issue. *See Skinner*, 562 U.S. 521 524.

The Tenth Circuit relied on the *Osborne* holding in *McDaniels v. Suthers*, which addressed a prisoner's access to postconviction DNA testing via Colorado's statutory regime., C.R.S. § 18-1-411 *et seq* There, the plaintiff petitioned the state trial courts for DNA testing pursuant to the relevant statutes. *McDaniel v. Suthers*, 335 Fed. Appx. 734, 735 (10th Cir. 2009). Based on the statutory criteria, the trial court denied the plaintiff's request. *Id*. The Court of Appeals affirmed the trial court's decision, and both the Colorado Supreme Court and the U.S. Supreme Court denied review. *Id*. The plaintiff then filed a Section 1983 claim seeking an injunction requiring the defendants to turn over biologic materials so that the plaintiff could have genetic testing done, but he was unsuccessful when the district court determined that he was not entitled to Section 1983 relief under a procedural due process theory. *Id*.

On appeal, the plaintiff argued that the district court failed to recognize that the "United States Constitution provides [him] a substantive and/or procedural due process right to access remaining, previously untested genetic materials in [his] criminal case which may or may not prove his actual innocence." *Id*. Relying on *Osborne*, the Tenth Circuit noted that "there is no right under the Due Process Clause to obtain postconviction access to the State's evidence for DNA testing." *Id*. (citing *Osborne*, 557 U.S. at 60). *See also D'Amario v. Davis*, 2010 WL 537807, at *3 (D. Colo. Feb. 12, 2010) (noting that "a convicted prisoner does not have a freestanding

19

constitutional right to postconviction access to DNA evidence, and…at most, a prisoner may have a procedural due process right to the proper application of a state-created right."). Moreover, while the Colorado statute does create "some post-conviction right to access biological evidence for DNA testing, this right is qualified to situations where the prisoner is able to demonstrate the [statutory] requisites." *McDaniel v. John Suthers*, 2008 WL 4527697, at \*10 (D. Colo. Oct. 2, 2008), aff'd sub nom. *McDaniel v. Suthers*, 335 Fed. Appx. 734 (10th Cir. 2009).

In his Amended Complaint, Mr. Hunter challenged the State Court rulings based on the allegation that he has a liberty interest in accessing materials for post-conviction DNA testing. (App. 29, ¶¶ 47–48.) However, the Supreme Court and Tenth Circuit have clearly disavowed any freestanding right to access materials for post-conviction DNA testing in *Osborne* and *McDaniel*, respectively. Notably, "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Osborne*, 557 U.S. at 68. Rather, post-conviction rights may be qualified to situations that meet the applicable statutory requisites. *See McDaniel, v. Suthers*, 335 Fed. Appx. 734 (10th Cir. 2009). In this case, any liberty interest Mr. Hunter does possess in post-conviction DNA testing is limited by the requirements of C.R.S. § 18-1-413. Thus, Mr. Hunter has not sufficiently alleged the deprivation of a protected liberty interest in post-conviction DNA testing that would entitle him to the due process he is seeking.

### 3. Mr. Hunter Did Not Allege a Lack of Adequate State Process

Even if Mr. Hunter did adequately plead deprivation of a protected liberty interest, he has not alleged a lack of adequate state process, and thus, his due process claim must fail.

Mr. Hunter bears the burden of demonstrating the inadequacy of state-law procedures available to him in state postconviction relief. *Osborne*, 557 U.S. at 71. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990). When an individual has a protected interest, they are "entitled to some sort of hearing before the government acts to impair that interest, although the hearing need not necessarily provide all, or even most, of the protections afforded by a trial." *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006) (citing *Mathews*, 424 U.S. at 335). In fact, "due process is flexible and calls [only] for such procedural protections as the particular situation demands." *Id*. (internal quotation marks and brackets omitted). For example, a "criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man." *Osborne*, 557 U.S. at 68. "Given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty" and "[t]he State accordingly has more flexibility in deciding what

21

procedures are needed in the context of postconviction relief." *Id*. (emphasis added).

"[W]hen a State chooses to offer help to those seeking relief from convictions," due

process does not "dictat[e] the exact form such assistance must assume." *Id*. (quoting

*Pennsylvania v. Finley*, 481 U.S. 551, 559 (U.S. 1987)).

In *Osborne*, the Supreme Court noted that, a convicted person's "right to due

process is not parallel to a trial right, but rather must be analyzed in light of the fact

that he has already been found guilty at a fair trial, and has only a limited interest in

postconviction relief." *Osborne*, 557 U.S. at 68. There, because the defendant had

already been convicted in state court, the Supreme Court reasoned that the State had

"flexibility in deciding what procedures are needed in the context of postconviction

relief." *Id*. at 69. Notably, the Tenth Circuit has previously stated that there is

"nothing inadequate about the procedures [Colorado] has provided to vindicate its

state right to postconviction relief in general, and nothing inadequate about how

those procedures apply to those who seek access to DNA evidence." *McDaniel*, 335

Fed. App'x at 736 (applying C.R.S. §§ 18-1-411 to -416).

In his Amended Complaint, Mr. Hunter relied on Colorado's statutory

provisions for requesting retesting of DNA evidence. (App. 31, ¶¶ 53-54.) Colorado

allows "[a]n incarcerated person [to] apply to the district court in the district where

the conviction was secured for DNA testing concerning the conviction and sentence"

if the person meets the four elements delineated in the statute. C.R.S. § 13-1-412

(2021). In March of 2020, Mr. Hunter filed a petition for new DNA testing alleging that a piece of the DNA evidence used to convict him was unreliable due to a break in the chain-of-custody and advances in DNA technology. (App. 66, ¶ 10.) The trial court denied his petition, concluding that he failed to sufficiently allege two of the factual criteria required by section 18-1-413(1)(a) and (1)(c)(I). (App. 72, ¶ 25.) The Colorado Court of Appeals agreed and affirmed the trial court's decision to deny DNA testing after reviewing the statutory requirements and finding that Plaintiff had not met those two elements. (App. 71-75, ¶¶ 22–31.)

Mr. Hunter has not alleged a lack of adequate state process at the time he requested such relief.[6] He admits that he filed a petition requesting retesting of the DNA evidence in accordance with the relevant statutes. (*See* App. 31, ¶ 54.) He also alleges that the statute, as applied in his case, has the potential to deny a person access to DNA evidence. (*Id.*) However, the denial of access to DNA evidence is not in itself unconstitutional. *See Zinermon*, 494 U.S. at 125–26. Further, the courts denied his access because he failed to comply with the requirements of C.R.S. § 18-1-411 *et seq*. Mr. Hunter does not have a right to DNA testing if he fails to follow the procedure for securing such testing. As detailed by the Colorado Court of Appeals, Mr. Hunter failed to meet two of the required elements, which resulted in

---

[6] Mr. Hunter now alleges that recent changes to the law indicate some prior insufficiency. (Aplt. Br. p. 5.) This argument is discussed in Section III below as the argument was not properly preserved and lacks merit.

the denial of his request. (App. 73, at ¶ 27.) This is not sufficient to show inadequate state process. Further, the Tenth Circuit has noted that the procedures in Colorado's post-conviction DNA testing statute are sufficient to provide sufficient process to incarcerated persons seeking DNA testing. *See McDaniel*, 335 Fed. App'x at 736.

Moreover, Mr. Hunter is free to pursue a new petition for DNA testing under the amended version of the statute and may do so in state court at any time. As Mr. Hunter himself notes, the revised statute made it easier to pursue the DNA testing that Mr. Hunter seeks because the revised statute removed the prohibition on successive petitions. *See* Colo. Rev. Stat. § 18-1-416. (*See also* Aplt. Br. p. 24.) Because Mr. Hunter has not taken advantage of the revised state procedures, he cannot claim a lack of state process under the new version of the post-conviction DNA testing statute.

Thus, Mr. Hunter had access to adequate state procedures for post-conviction DNA testing, and his failure to follow those procedures does not give rise to a due process violation.

### III. THE OTHER ISSUES RAISED IN MR. HUNTER'S OPENING BRIEF WERE NOT PRESERVED, AND IF THEY WERE, THEY ARE WITHOU MERIT

#### A. Standard of Review

An issue is not preserved for appeal unless a party "alerts the district court to the issue and seeks a ruling." *U.S. Aviation Underwriters, Inc. v. Pilatus Bus.*

*Aircraft, Ltd*., 582 F.3d 1131, 1142 (10th Cir. 2009) (citing *Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1141 (10th Cir. 2007). "A party does not preserve an issue merely by advancing a related theory before the district court, or by presenting the issue to the district court in a vague and ambiguous manner." *Id.* (internal quotations omitted). "Nor may a party preserve an argument by making a fleeting contention before the district court." *Id.* (citing *Tele–Commc'ns, Inc. v. Comm'r*, 104 F.3d 1229, 1233–34 (10th Cir.1997).

### B. Mr. Hunter Did Not Preserve His Arguments Regarding the Unconstitutionality of the Post-Conviction DNA Statute Prior to 2023 and, Even if He Had, His Arguments Lack Merit

In his Opening Brief, Mr. Hunter challenges the district court's dismissal of his Amended Complaint based on the unsupported allegation that the prior version of Colorado's post-conviction DNA testing statute was unconstitutional. (Aplt. Br. p. 23–25.) Mr. Hunter alleges that the General Assembly's decision to amend the statute in 2023 is evidence that the statute was unconstitutional as previously written. (*Id.*) He further alleges that the district court's reliance on the 2022 Colorado Court of Appeals opinion is improper because that court relied on the unconstitutional version of the statute, and thus, it cannot be considered a final judgment that would allow application of the *Rooker-Feldman* doctrine. (*Id.*)

Mr. Hunter did not raise this issue at the district court, and thus, it is improper to consider it here. The General Assembly's amendments to Colo. Rev. Stat. § 18-

1-411 went into effect on October 1, 2023. *See* 2023 Colo. Legis. Serv. Ch. 15, section 9, Effective date (HB 23-1034). Mr. Hunter filed his Amended Complaint on February 9, 2024 and the district court dismissed the case on March 19, 2024. Mr. Hunter had adequate time to raise this issue before the district court, but he chose not to do so. The only reference to the amended statute came in his Response to the various motions to dismiss where he stated that the "2020 version of C.R.S § 18-1-413 . . . has been substantially modified, and therefore is bad law with no preclusive effect." (App. 103.) This statement does not rise to the level of challenging the constitutionality of the statute and only refers to the preclusive effect of the statute on later decision. Because Mr. Hunter failed to challenge the constitutionality of the post-conviction DNA statute in the lower court, he has waived this argument, and this Court should not consider it.

Regardless of Mr. Hunter's failure to preserve this issue, Mr. Hunter has not cited any authority that would support the inference that a legislature's decision to amend a statute is an admission of the unconstitutionality of that statute. Mr. Hunter also failed to cite any authority to support his contention that the General Assembly sought to modify the statute because it was unconstitutional. Further, Mr. Hunter's argument does not acknowledge that the Colorado Court of Appeals relied on the version of the statute that was in effect at the time it made its decision. There is no evidence that the General Assembly intended for the amended statute to apply

retroactively so there was no reason for the district court to apply a different version of the statute in evaluating the Colorado Court of Appeals' decision in the prior state cases. Thus, even if Mr. Hunter properly preserved this issue, he has not provided any support for his argument that would invalidate the state court's final judgment.

### C. Mr. Hunter Did Not Preserve His Arguments Regarding the Constitutionality of Colorado's State Clemency Statute

Mr. Hunter challenges the district court's dismissal of the Amended Complaint by alleging that he has a state-created liberty interest in in review for clemency. (Aplt. Br. p. 25.) He further alleges that the district court erred in not considering the constitutionality of that statute. (*Id.*)

While Mr. Hunter did make vague references to state clemency in his Amended Complaint and his Response to the motions to dismiss, he failed to challenge the constitutionality of the clemency statute itself. (*See* App. 29, 33, ¶¶ 47, 49, 61.) Accordingly, Mr. Hunter failed to preserve the issue of constitutionality, and this Court should not consider it in reaching its decision. Further, the district court dismissed his Amended Complaint for lack of subject matter jurisdiction, which is a threshold issue that must be addressed before a court reaches the merits of a case such as deciding whether a liberty interest exists. *See Sinochem Int'l Co. Ltd.*, 549 U.S. at 423. Thus, this is not a proper reason for this Court to reverse the district court's decision and this Court should not consider it for such purpose.

Mr. Hunter cites *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458 (1981), to support his argument that he has a state created interest in clemency under Colorado's clemency statute. In *Dumschat,* the Supreme Court examined whether a discretionary state privilege that had been generously granted in the past could create a liberty interest subject to a due process analysis. *Id.* at 464. The Court held that "the mere existence of a power to commute a lawfully imposed sentence, and the granting of commutations to many petitioners, create[s] no right or entitlement." *Id.* at 467 (internal quotations omitted).

Here, Mr. Hunter's argument is the same as the one the Supreme Court rejected in *Dumschat*. In his Amended Complaint, he alleged that he has a liberty interest in obtaining a pardon or reduction in his sentence through state clemency proceedings. (App. 29, ¶¶ 47, 49.; *see also* Aplt. Br. p. 25 (stating that Colorado's clemency statute creates a liberty interest "in seeking commutation that is enforceable through the Fourteenth Amendment.")) However, Colorado's statute, like the one at issue in *Dumschat,* is entirely discretionary. *See* Colo. Rev. St. § 16-17-101 ("The governor is hereby fully authorized, when he deems it proper and advisable and consistent with the public interests and the rights and interests of the condemned, to commute the sentence in any case….") Thus, even if Mr. Hunter had preserved this issue, he has not sufficiently alleged the deprivation of a protected

liberty interest in state clemency that would entitle him to the due process he is seeking.

### D. Mr. Hunter Did Not Preserve His Arguments Regarding Alleged *Brady* Violations

Mr. Hunter alleges that the district court erred in failing to consider his *Brady* claim related to alleged discovery violations from his criminal case. (Aplt. Br. p. 13, 26–29.) However, Mr. Hunter never raised a *Brady* issue at the district court level, and thus, this argument was not preserved.

### E. Mr. Hunter Did Not Preserve His Arguments Regarding Federal Habeas Corpus Relief, or his Alleged Gateway and Actual Innocence Claims and, Even if He Had, His Arguments Lack Merit

In his Opening Brief, Mr. Hunter attempts to rely on federal habeas corpus law to get around the procedural bars to his claim. (Aplt. Br. p. 29–30.) However, Mr. Hunter has not filed a federal habeas petition; Mr. Hunter's only claim was brought under Section 1983 and alleged a due process violation by Ms. Woods. Because Mr. Hunter's case in the district court was not a habeas case, this argument cannot be newly raised in this Court.

Even if Mr. Hunter had properly filed a federal habeas petition, the proper respondent for such a petition is the person "the person who has custody over the petitioner." *Rumsfeld v. Padilla,* 542 U.S. 426, 434 (2004). In other words, the proper respondent is "the person with the ability to produce the prisoner's body before the habeas court." *Id.* at 435. In this instance, the proper respondent is the

warden of the prison Mr. Hunter is incarcerated in, not a former forensic scientist like Ms. Woods who has no control over Mr. Hunter's confinement.

Mr. Hunter also attempts to make the related argument that his request for DNA testing is a "gateway claim" to pursue actual innocence, and thus, the procedural bar of *Rooker-Feldman,* cannot apply. (Aplt. Br. p. 29–30.) He also raises a new argument based on *Schlup v. Delo*, 513 U.S. 298 (1995), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013) in which he suggests that Colorado's procedure for securing post-conviction DNA testing is preempted because it impedes the ability to seek DNA testing pursuant to Section 1983. (Aplt. Br. p. 30–34.) Notably, Mr. Hunter did not raise the issue of preemption in the district court; Mr. Hunter also did not raise his "gateway claim" theory or cite either *McQuiggin* or *Schlup* in his Amended Complaint or his briefing regarding the motions to dismiss. Mr. Hunter appears to concede that he did not raise the issue of pre-emption at the district court level, citing *Thayer v. McDonald,* 781 P.2d 190, 190-91 (1989) for the proposition that he may raise the issue at any time. (App. 31) However, *Thayer* addresses the defense of subject matter jurisdiction, which is entirely unrelated to Mr. Hunter's attempt to raise an unpreserved issue in this Court.

Even if Mr. Hunter properly preserved these issues, his reliance on *McQuiggin* and *Schlup* is misplaced. Hunter's gateway claim theory is unclear, but the Supreme Court has held that a petitioner's actual innocence, if proved, may serve as a

"gateway" that allows a petitioner to overcome either a procedural bar or a one-year statute of limitations. *See Schlup,* 513 U.S. at 315*; McQuiggin,* 569 U.S. at 392. However, the Supreme Court's holding only applies to habeas petitions, not Section 1983 claims. *See generally Schlup, supra; House v. Bell*, 547 U.S. 518 (2006). As discussed above, this is not a habeas case, so the rationale of *McQuiggin* and *Schlup* are inapplicable.

### F.  Bad Faith Prosecution

Mr. Hunter also challenges the district court's dismissal of his Amended Complaint by alleging that an "exception" for bad faith prosecution allows him to show his actual innocence for purposes of state and federal habeas corpus review. (Aplt. Br. p. 34 – 37.) He then claims that he stated a claim for relief under Section 1983, and thus, it was improper for the district court to dismiss his Amended Complaint. (*Id.*)

As previously noted, the district court dismissed Mr. Hunter's claim as barred by the *Rooker-Feldman* doctrine. The district court did not reach the merits of Mr. Hutner's claim, and thus, did not decide whether Mr. Hunter sufficiently plead a claim for relief against Ms. Woods. Additionally, this is not a habeas case so any claimed exception for this purpose is inapplicable.

## CONCLUSION

This Court should affirm the district court's dismissal of Mr. Hunter's claim against Ms. Woods.

DATED this 10th day of December 2024.

Respectfully submitted,

**OVERTURF McGATH
& HULL, P.C.**

By  *s/ Scott A. Neckers*
Scott A. Neckers
Steven W. Boatright
Sarah A. Thomas
Overturf McGath & Hull, P.C.
625 East Sixteenth Avenue, Suite 100
Denver, Colorado 80203
Tel: (303)860-2848
Fax: (303) 860-2869
san@omhlaw.com
swb@omhlaw.com
sat@omhlaw.com
*Attorneys for Defendant Yvonne M.
Woods*

## CERTIFICATE OF SERVICE

I hereby certify that:

 ☑  All other parties to this litigation are either: (1) represented by attorneys; or (2) have consented to electronic service in this case

December 10, 2024_____
Date

*s/Scott A. Neckers*_____
Signature

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f):

[X] this brief contains 7798 words, or,

[ ] this brief uses a monospaced typeface and contains [state the number of] lines of text.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X] this brief has been prepared in a proportionally spaced typeface using Windows Word in Times New Roman, Type Size 14, or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].


December 10, 2024_____
Date


s/Scott A. Neckers_____
Signature